**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| BAYVIEW LOAN SERVICING LLC, | : | No. 3 WAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court entered May 17, 2017 at No. |
| | : | 1832 WDA 2015, affirming the |
| v. | : | Judgment of the Court of Common |
| | : | Pleas of Jefferson County entered |
| | : | November 4, 2015 at No. 516-2012- |
| JAMES BERNARD WICKER AND BERYL | : | CD. |
| G. WICKER, | : | |
| | : | ARGUED:  October 24, 2018 |
| Appellants | : | |

**OPINION**

**JUSTICE BAER**                                    **DECIDED:  MARCH 28, 2019**

We granted review to consider the application of Pennsylvania's business records exception to the rule against hearsay, pursuant to Pennsylvania Rule of Evidence 803(6) and the Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108.  The parties before the Court agree that current Pennsylvania precedent allows a records custodian to authenticate documents even if the witness did not personally record the specific information in the documents.  The parties disagree, however, as to whether a records custodian can lay a foundation for documents incorporated into the files of the custodian's employer when the information in the documents was recorded by a third party, a process which has been allowed under the similar but not identical Federal Rule of Evidence 803(6), pursuant to the so-called adopted business records doctrine.  For the reasons that follow, we affirm the Superior Court in concluding that the trial court did not abuse its

discretion in allowing the testimony of the records custodian and admitting the documents under the facts of this case.

James and Beryl Wicker signed a mortgage agreement for their residence in Punxsutawney, Pennsylvania in favor of Countrywide Bank, FSB (Countrywide) in February 2008, which secured a promissory note executed by James Wicker in consideration for a loan with a principal amount of $119,000. The mortgage agreement indicated that Mortgage Electronic Registration Systems, Inc. (MERS) would act as nominee for Countrywide and its successors and assigns and was designated as the mortgagee. In an assignment of mortgage recorded in November 2011, MERS, as nominee for Countrywide, assigned the mortgage to Bank of America.

In May 2012, Bank of America filed a mortgage foreclosure action against the Wickers alleging that the Wickers defaulted on their mortgage as of September 1, 2010. It further averred that it had provided the Wickers with the statutorily required foreclosure notice pursuant to 41 P.S. § 403 on September 21, 2011. Subsequently, Bank of America filed a motion for summary judgment, which the trial court granted in part and denied in part. In so doing, the trial court narrowed the issues for trial to determining whether Bank of America had provided proof of (1) the required foreclosure notices; (2) the date of default; and (3) the amount of indebtedness.

On July 14, 2015, counsel for Bank of America filed a praecipe to substitute Bayview Loan Servicing, LLC (Bayview) as plaintiff in the mortgage foreclosure action following an assignment of the mortgage from Bank of America to Bayview recorded on June 15, 2015. A non-jury trial occurred on August 13, 2015, at which Bayview presented only one witness, Terrance Schonleber, a litigation manager for Bayview, and the Wickers did not present any witnesses. Bayview intended for Schonleber to authenticate its business records, which would provide information relating to the Wickers' mortgage and

promissory note; their alleged default and indebtedness; and the foreclosure process. The Wickers' counsel objected at the beginning of Schonleber's testimony and renewed the objection in regard to the individual exhibits. He argued that the testimony would constitute hearsay because Schonleber did not have the requisite personal knowledge of the records Bayview sought to admit, given that the records originated from Bank of America, rather than his employer, Bayview.

In response to the initial objection, Bayview's counsel questioned Schonleber to provide a foundation for his testimony. Schonleber explained that he had worked for Bayview as a litigation manager for approximately two years. In this role, he had access to Bayview's "master servicing records" of delinquent borrowers and was familiar with the Wickers' file. Notes of Testimony (N.T.), August 13, 2015, at 8. He additionally described the interaction between Bayview and Bank of America regarding the records and explained the "loan boarding process," which occurred when a loan was purchased by Bayview from another servicer. *Id.* at 11. He asserted that the boarding process involves "[fourteen] project coordinators, data mapping, imaging, [and] loan review," which all worked to "basically safeguard and check all figures that come from the prior servicer into ours." *Id.*

He stated that the Wickers' loan was "less complex" than some because of Bayview's longstanding business relationship with Bank of America and the fact that both companies used the same mortgage platform, MSP, which he asserted was an industry standard. *Id.* at 11. The platform, according to the testimony, is used for making records "at or near the time [of] each occurrence of each event" in order to create "an accurate depiction of every transaction and every occurrence for each loan." *Id.* at 13. He additionally stated that Bayview and Bank of America "work in conjunction, hand-in-hand, for each loan," in order to "make sure that all the safeguards are in place in order that

there are no mistakes." *Id.* at 13-14. He further established that this process is part of "regularly conducted activity at Bayview." *Id.* at 14.

Following this proffer, the Wickers' counsel reiterated his objection, arguing that Schonleber's testimony constituted double hearsay because he did not have personal knowledge of the records as required by Pa.R.E. 602[1] given that he did not create the documents and that the records did not originate from Bayview but instead from Bank of America. *Id.* at 14-15. While counsel tacitly acknowledged that Schonleber could have overcome the first level of hearsay under the business records exception of Pa.R.E. 803(6) in regard to the documents originating from Bayview, *id.* at 17, he asserted that Schonleber could not authenticate the records to the extent they contained information derived from Bank of America because he had never worked for Bank of America.[2]

---

[1] Pennsylvania Rule of Evidence 602, entitled "Need for Personal Knowledge" provides in full as follows:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

Pa.R.E. 602.

[2] Pennsylvania Rule of Evidence 803(6) provides:

> Rule 803. Exceptions to the Rule Against Hearsay-- Regardless of Whether the Declarant Is Available as a Witness
>
> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

* * * *

After a brief recess to consider Rule 602 in conjunction with Rule 803(6), as well as the Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108(b) (the Act),[3] the

(6) Records of a Regularly Conducted Activity. A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:

> (A) the record was made at or near the time by - or from information transmitted by - someone with knowledge;

> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

> (C) making the record was a regular practice of that activity;

> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

> (E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

[3] The Uniform Business Records as Evidence Act provides in full as follows:

> § 6108. Business records

> (a) Short title of section. - This section shall be known and may be cited as the "Uniform Business Records as Evidence Act."

> (b) General rule. - A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of

trial court concluded that requirements of the Rules and the Act were met in this case. Initially, it found that the witness indicated that information was recorded "at the time or near the time of each occurrence or event," kept in the ordinary course of its business, and constituted a regular part of their activity. N.T. at 20-21. Finally, the trial court provided the following analysis under Rule 803(6) and the Act:

> In total, I'm looking at all of the evidence, but my thought, looking at where we are here, Bayview with its servicing platform, it works in conjunction with Bank of America and regularly gets these records, they regularly rely on them, they regularly use them, and, as such, relying on their business and using that in the regular course of business, I think they are admissible through this witness because he has personal knowledge that this is how the records come in and this is how they are used. And there's also been no testimony, and there's no evidence that there's motive or opportunity to prepare an inaccurate record.

N.T. at 22-23. Accordingly, the court overruled the Wickers' objections to Schonleber's testimony and permitted the admission of the questioned records into evidence. The court observed that counsel could still dispute the weight to be accorded the documents. N.T. at 22. Schonleber then proceeded to testify in regard to the various documents regarding the foreclosure notices, the default date, and the amount of indebtedness, and was subjected to cross-examination on all relevant points by the Wickers' counsel.

> its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.
>
> (c) Definition. - As used in this section "business" includes every kind of business, profession, occupation, calling, or operation of institutions whether carried on for profit or not.

42 Pa.C.S. § 6108.

On September 4, 2015, the trial court issued a brief order and opinion concluding that the documents authenticated by Schonleber established that (1) the appropriate foreclosure notice had been sent to the Wickers' last known address, which was also the mortgaged property; (2) the default date was September 1, 2010; and (3) that the amount due as of the date of trial was $155,413.54.[4]

On September 14, 2015, the Wickers filed a motion for reconsideration in which they reasserted their challenge to Schonleber's testimony. The trial court denied the motion. After the court entered judgment against the Wickers, the Wickers filed a notice of appeal to the Superior Court, raising what the trial court counted as thirty-two separate claims of error in a thirty-five paragraph Statement of Issues Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued a one paragraph opinion pursuant to Pa.R.A.P. 1925(a), referencing its prior decisions in the matter.[5] After the Wickers narrowed their claims to a more manageable four issues in their brief, the Superior Court directed the trial court to file an opinion addressing those issues, to the extent they were preserved below.

The trial court responded by observing that the Wickers failed to file a post-trial motion pursuant to Pa.R.C.P. 227.1 and thus arguably waived their issues on appeal. However, it correctly predicted that the Superior Court would treat the motion for reconsideration as a post-trial motion and addressed the issues preserved in that motion

---

[4] In so doing, the court also rejected the Wickers' factual challenge based upon a difference between the indebtedness indicated in a document dated May 14, 2015 ($153,849.02) and that stated in a document dated August 13, 2015 ($155,413.54). The court observed that the earlier document clearly indicated that additional interest and charges would continue to accrue.

[5] Prior to trial, the court had issued opinions and orders addressing the numerous motions filed by the parties, which will not be discussed here.

including the challenges related to Schonleber's testimony which are currently before this Court.

In its opinion, the court relied upon its analysis at trial, as set forth above, as well as citing the Superior Court's decision in *U.S. Bank v. Pautenis*, 118 A.3d 386 (Pa. Super. 2015), which, as discussed in detail below, involved similar issues related to a records custodian in a mortgage foreclosure case involving multiple assignments of the mortgage. The trial court recognized that the Superior Court in *Pautenis* reaffirmed the test set forth in *Boyle v. Steiman*, 631 A.2d 1025, 1032-33 (Pa. Super. 1993), for determining whether a witness attempting to authenticate business records pursuant to Rule 803(6) and the Act can provide sufficient information to justify a presumption of trustworthiness. Specifically, it observed that "[a]s long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence." Tr. Ct. Op. at 7 (quoting *Pautenis*, 118 A.3d at 401).[6]

The trial court recognized that the Superior Court in *Pauteni*s affirmed the exclusion of documents where the witness in that case was not familiar with the record or the record-keeping process. The trial court in this case applied the same test but reached the opposite conclusion given that Schonleber was familiar with Bayview's record-keeping system, that Bank of America utilized the same system, that he was able to confirm that the entries would have been made near the time of the relevant events, and that he had reviewed the Wickers' file prior to trial. The court concluded that this was sufficient to justify the admission of the business records without the need for Schonleber's personal knowledge of the underlying facts.

---

[6] As noted *infra*, this test was initially set forth by this Court in *In re Indyk's Estate*, 413 A.2d 371, 373 (Pa. 1979).

On appeal, the Superior Court affirmed in a unanimous published opinion. *Bayview Loan Servicing LLC v. Wicker*, 163 A.3d 1039 (Pa. Super. 2017). As relevant to the issues currently before this Court, the Superior Court held that the trial court did not abuse its discretion in concluding that Schonleber could authenticate the business records based upon the court's application of the analysis previously set forth in *Boyle* and *Pautenis*. *Id.* at 1048. After the Wickers filed a petition for allowance of appeal, this Court granted limited review to consider whether the Superior Court erred in affirming the trial court's decision to allow Schonleber to authenticate the documents and to resolve an asserted conflict in the Superior Court decisions addressing the business records exception to the rule against hearsay.[7]

Before this Court, the Wickers reiterate their argument that Bayview failed to satisfy the business records exception of Rule 803(6) and the Act because the information contained in the admitted documents was recorded by Bank of America. They assert that Pennsylvania's business records exception does not permit a business's records custodian to authenticate documents which contain statements of people who are not employed by the business and thus do not have a duty to report accurately to that business. The Wickers concede that the witness need not have been personally involved

---

[7] We granted review of the following issues, as phrased by the Wickers:

> (1) Did the Superior Court err in affirming the decision of the trial court which found [Bayview's] witness competent to testify and received evidence under the business records exception to the hearsay rule?

> (2) As to the contested evidence received by the Court, will a grant of allocatur, here, resolve the conflict between both *U.S. Bank v. Pautenis; Boyle v. Steiman* and *Commonwealth Financial Systems v. Smith* as to the admissibility of witness testimony at a debt collection trial?

*Bayview Loan Servicing LLC v. Wicker*, 178 A.3d 1289, 1290 (Pa. 2018).

in the recording process of the specific evidence but contend that the witness must have "firsthand knowledge" of the business's recording process  *Wickers' Brief* at 23. Moreover, the Wickers maintain that the trial court improperly placed the burden on them to demonstrate that the records were unreliable, rather than placing the burden on Bayview, as the proponent of the evidence, to demonstrate that the records were trustworthy.  The Wickers propose that Bayview should have either authenticated the documents through a witness from Bank of America or utilized the process sanctified by Rule 803(6) for certification of the document pursuant to Pa.R.E. 902(11), which involves the prior certification of the record by a custodian or other qualified person of the creating entity.[8]

---

[8] Pennsylvania Rule of Evidence 902(11) and the related provision of Rule 902(12) provide as follows:

> Rule 902. Evidence That is Self-Authenticating
>
> The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:
>
> * * * *
>
> (11) Certified Domestic Records of a Regularly Conducted Activity.  The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with Pa.R.C.P. No. 76.  Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record - and must make the record and certification available for inspection - so that the party has a fair opportunity to challenge them.
>
> (12) Certified Foreign Records of a Regularly Conducted Activity. In a civil case, the original or a copy of a foreign record that meets the requirements of Rule 902(11), modified

They additionally maintain that a conflict exists in the Superior Court's precedent relating to the application of the business records exception in debt collection and mortgage foreclosure cases. The Wickers observe that the Superior Court has utilized the standard adopted by this Court, which states that a party seeking to introduce business records pursuant to the hearsay exception must "provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness." Wickers' Brief at 31 (quoting the standard set forth by this Court in *In re Indyk's Estate*, 413 A.2d 371, 373 (Pa. 1979). As applied in the debt collection arena, the Wickers favor the Superior Court's decisions in *Pautenis* and *Commonwealth Financial Systems, Inc. v. Smith (CFS)*, 15 A.3d 492 (Pa. Super. 2011), which they view as requiring witnesses authenticating business records to have personal knowledge of the prior servicer's record-keeping practices. They emphasize that the court in *CFS* declined to follow what has been termed the "federal rule of incorporation" or the "adoptive business records doctrine," which the party in *CFS* had characterized as allowing for authentication of the third-party's records based upon "mere acceptance or incorporation into an assignees' business records." *Id.* at 37 (quoting *CFS*, 15 A.3d at 499).

In contrast, they contend that the Superior Court in the case at bar and other unpublished decisions has diverged from *Pautenis* and *CFS*. They urge this Court to reject the rulings in these cases and their reliance on the prior decision in *Boyle*, which

as follows: the certification rather than complying with a statute or Supreme Court rule, must be signed in a manner that, if falsely made, would subject the maker to a criminal penalty in the country where the certification is signed. The proponent must also meet the notice requirements of Rule 902(11).

Pa.R.E. 902(11), (12).

they imply is moving toward the federal adopted business records doctrine.[9] They argue against the adoption of an evidentiary rule that would allow loan servicers and other debt collectors to incorporate the records of prior companies into their own records, which they view as particularly dangerous given what they allege are frequent errors in the loan servicing industry due to the repeated transfers. In contrast, they contend that witnesses in debt collection cases should only be able to testify pursuant to their personal knowledge of the record-keeping processes of the recording company to establish the elements listed in Rule 803(6).

Several non-profit organizations representing low-income consumers filed an *amici curiae* brief in support of the Wickers.[10] *Amici* contend that debt servicers, such as Bayview, regularly transfer servicing rights during the life of a mortgage or other debt. They argue that errors are rampant in the recording systems and during the transfer process, especially in regard to loans in default. *Amici* provide a litany of errors found in the loan histories of their own clients and instances where current servicers could not explain fees placed on the accounts by prior servicers.

---

[9] Notably, the Superior Court's decision in *Boyle* did not involve loan servicing or the acquisition of records from a prior entity, but instead related to a private investigator's attempts to collect fees he claimed an attorney owed him for investigative work on personal injury cases. The business record exception became relevant following the investigator's death and the estate's use of the investigator's son to authenticate his father's business ledgers. The son testified that he had knowledge of his father's record-keeping because he had been "secondarily" involved in the recording process which occurred in the regular course of business at or near the time of the relevant events. *Boyle*, 631 A.2d at 1033. In affirming the trial court allowance of the testimony, the Superior Court in *Boyle* utilized the standard established by this Court in *In re Indyk's Estate*, 413 A.2d at 373.

[10] The following organizations submitted the brief: Community Legal Services, Philadelphia Legal Assistance, Neighborhood Legal Services Association, Community Justice Project, Pennsylvania Legal Aid Network, and the National Consumer Law Center.

*Amici* emphasize that the business records exception has been adopted by courts because of the inherent reliability of records kept in the ordinary course of business. Given the errors listed above, *Amici* assert that the records in the loan service industry should not be deemed inherently reliable. *Amici* characterize Bayview and other debt servicers as proposing a rule of incorporation contrary to Pennsylvania law that would deem business records admissible "simply because they were made by a business." *Amici* Brief at 4. Like the Wickers, they instead maintain that debt servicers should present the records solely through a witness from the prior servicer or via the Rule 902(11) certification process. They urge this Court to maintain a strict interpretation of the business records rule, which they contend was applied by the Superior Court in *Pautenis* and *CFS*.

In response, Bayview asserts that the Superior Court correctly concluded that the trial court did not abuse its discretion in allowing Schonleber to authenticate Bayview's records pursuant to the business records exception. Moreover, Bayview contends that the decision in the case at bar is entirely consistent with the decisions in *Pautenis*, *CFS*, *Boyle*, and several other unpublished Superior Court decisions that apply the test set forth by this Court in *In re Indyk's Estate*. It asserts that the differences in the cases derive not from the standard applied but because of distinctions in the trustworthiness of the specific evidence and the credibility of the witnesses as determined by the trial courts. In those cases denying admissibility, Bayview contends that the trial courts heard evidence that the witnesses were unfamiliar with the prior servicers' record-keeping processes or that the records contained errors or discrepancies. It additionally emphasizes the wide discretion granted to trial courts' evidentiary decisions. Notably, Bayview does not call for this Court to embrace the federal "adoptive business records doctrine," arguing instead

that the evidence in this case was admissible under the current precedent regarding Pennsylvania's business records exception as set forth in Rule 803(6) and the Act.

In reviewing evidentiary decisions, this Court has repeatedly emphasized that the admissibility of evidence is within the sound discretion of the trial court, which appellate courts will not disturb absent an abuse of discretion or error of law. *See In re A.J.R.-H.*, 188 A.3d 1157, 1167 (Pa. 2018). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion," but instead requires demonstration that the lower court's decision was "a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support from the evidence or the record so as to be clearly erroneous." *Polett v. Public Communications, Inc.*, 126 A.3d 895, 914 (Pa. 2015) (internal quotation marks and alteration designations omitted). In this case, we consider whether the trial court abused its discretion or erred as a matter of law in allowing Schonleber to testify to exhibits which included information recorded by a prior loan servicer under the business records exception to the rule against hearsay. Accordingly, we turn first to the underpinnings of the exception.

Our rules of evidence mandate that a witness may testify to a matter only if "the witness has personal knowledge of the matter." Pa.R.E. 602. Moreover, Pennsylvania's rule against hearsay provides that a statement, which includes a "written assertion," is excludable if the person who made the statement does not make it "while testifying at the current trial" and if the evidence is offered "to prove the truth of the matter asserted in the statement." Pa.R.E. 801, 802. As applied to the case at bar, there is no question that the exhibits constituted hearsay as they were offered to prove the details of the mortgage and default and included statements that were not made by Schonleber and about which he did not have personal knowledge at the time they were recorded.

Nevertheless, evidence may be admissible, despite its hearsay attributes, if it falls within an exception established by this Court's rules or by statute. Pa.R.E. 802. Importantly, where a document contains multiple levels of hearsay, each level of hearsay must satisfy a recognized exception. *See In re A.J.R.-H.*, 188 A.3d at 1169. This Court has observed that exceptions to the rule against hearsay have developed to allow the admission of specified types of evidence "based upon (1) the necessity for such evidence, and (2) the circumstantial probability of its trustworthiness." *Fauceglia v. Harry*, 185 A.2d 598, 601 (Pa. 1962) (citing 5 Wigmore, Evidence § 1420 (3d ed. 1940)). In regard to the business records exception, the circumstantial trustworthiness arises from the regularity with which business records are kept and the reliance that businesses place on the accuracy of those records. *See id.; Williams v. McClain*, 520 A.2d 1374, 1376 (Pa. 1987); 1 *West's Pennsylvania Practice, Evidence* § 803(6)-1 (4th ed.).

The business records exception has been incorporated into Pennsylvania law through the Uniform Business Records as Evidence Act (Act), 42 Pa.C.S. § 6108, which was originally enacted in 1939, and Pennsylvania Rule of Evidence 803(6), originally adopted in 1998, which generally tracks Federal Rule of Evidence 803(6), *supra* at 5 n.3 and 4 n.2, respectively. The Act and the Rule substantially overlap in that both generally require that a custodian or other qualified witness testify that the record was made "at or near the time" of the event recorded and that the record was kept in the regular course of business.[11] *Id.* Moreover, both provide for the trial court to make a determination in regard to whether the circumstances surrounding the record "justify its admission" or "indicate a lack of trustworthiness." *Id.*

---

[11] As discussed *infra*, our Rule additionally provides that the requirements may be satisfied by "a certification that complies with Rule 902(11) or (12) or with a statute permitting certification," which are set forth *supra* at 10, n.8. Pa.R.E. 806(3).

As this Court explained in *Fauceglia*, the purpose of the Act "was to enlarge the old common-law shopbook exception to the hearsay rule by eliminating the many illogical distinctions which had evolved during the period" when individual shopkeepers were the predominant business organization.[12]  *Fauceglia,* 185 A.2d at 600.  Recognizing the transition to large, complex business organizations, this Court addressed the difficulty of presenting witnesses with personal knowledge of the details of each transaction:

> Quite often different individuals have personal knowledge of the various phases of a transaction so that no one individual has knowledge of the entire transaction. In addition, the frequent turnover of personnel often makes it impossible to identify the employee - if it were only one - who took part in the transaction. Under these circumstances, to require the entrant to have personal knowledge of the event recorded, and to require proof of the identity of the recorder, would exclude almost all evidence concerning the activities of large business organizations - a result diametrically opposed to the purpose and spirit of the Business Records as Evidence Act.

*Id.* (citing Wigmore, Evidence § 1530 at 378 (3d ed. 1940); McCormick, Evidence 602 (1954)) (footnote omitted).

While our holding in *Fauceglia* provided for an expansive view of the business records exception, we nevertheless used language suggesting a limitation to the exception, holding that "as long as someone in the organization has personally observed the event recorded, the evidence should be admitted."  *Id.* at 600.  In that case, however, we were not faced with considering whether evidence recorded by someone outside the

---

[12] Shopbooks are "[b]ooks of original entry kept by merchants, shop-keepers, mechanics, and the like, in which are entered their accounts and charges for goods sold, work done, etc." *Blacks Law Dictionary* 961 (6th abr. ed. 1991).  Apparently, various requirements arose to allow for the admission of shopbooks kept in the normal course of business, while guarding against the potential of self-serving entries by the shopkeepers.  *See e.g. Freedman v. Mutual Life Ins. Co. of New York*, 21 A.2d 81, 85–86 (Pa. 1941).

organization could ever be admissible under the business records exception, the issue currently before the Court.[13]

This Court also considered the business records exception in *In re Indyk's Estate*, 413 A.2d 371 (Pa. 1979), and set forth the standard relied upon by the parties and the courts in the case at bar. In that case, we concluded that the trial court did not abuse its discretion in admitting exhibits where the authenticating witness only had personal knowledge of the record-keeping practices utilized after the witness's employer acquired the company that originally created the record. We found no error in the admission of the records where the witness testified that he had personally been in charge of the records since the acquisition and had found that the "records had been kept in conformity with the record-keeping practice of the insurance industry" and in compliance with the governmental regulations prior to the acquisition. *Id.* at 374. After contemplating the logic of *Fauceglia* as set forth above, we opined that the import of the Act is to "require that the basic integrity of the record-keeping is established." *Id.* at 373. We further concluded that the hearsay character of business records evidence could be offset "[a]s long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company." *Id.*

Having reviewed the contours of Pennsylvania's business records exception, we now consider its application in the context of the increasingly common situation where a loan, in this case a mortgage, is originated by one company but is later acquired by a

---

[13] In *Fauceglia*, the Court considered the admissibility of army medical records kept by the Veterans' Administration as authenticated by a records custodian. We held the evidence admissible under the Act, concluding that it was "extremely unlikely that entries made on the standard form in a regular fashion pursuant to army regulations had no basis in fact," even though no individual could testify to recording the information personally. *Fauceglia,* 185 A.2d.at 600.

separate company. The question is whether the records containing information originally recorded by the first company may be authenticated by an employee of the current holder of the loan or whether the litigant must provide an employee of each of the prior holders of the loan or a certification of the records under Rule 902(11) or (12), as discussed below.

In *Commonwealth Financial Systems, Inc. v. Smith (CFS)*, 15 A.3d 492 (Pa. Super. 2011), the Superior Court recognized that it was addressing a question of first impression in determining "whether computerized files of an original creditor are admissible as the business records of a successor debt buyer," a question that mirrors the issue currently before this Court. *Id.* at 496. Specifically, the Superior Court in *CFS* faced the application of the business records exception to credit card records where the credit card was originally issued by one company but the credit card debt was later purchased by the litigant, CFS, after the card holder defaulted. Thus, similar to the case at bar, CFS attempted to introduce into evidence records created by its predecessors.

The Superior Court properly looked to the requirements for Pennsylvania's business records exception set forth in Rule 803(6) and the Act. In so doing, it first rejected CFS's invitation to adopt the federal "rule of incorporation" which the company described as allowing for the admission of a third party's document "as part of the business records of the acquiring business, if the business integrated the document into its records and relied upon it." *CFS*, 15 A.3d at 497. The Superior Court then determined that the trial court in *CFS* did not abuse its discretion in excluding evidence which it had good reason to find untrustworthy. The court emphasized that CFS attempted to introduce an unsigned credit card agreement from the incorrect calendar year that included interest rates and counsel fees that did not conform to those alleged in the complaint. Additionally, the witness offered by CFS acknowledged that he was unfamiliar with how the prior entities created or maintained their business records and that he did

not have personal knowledge that the information was recorded at or near the time of the events. *Id.* at 494. As the Superior Court in *CFS* observed, the Pennsylvania business records exception under Pa.R.E. 803(6) and the Act require "the proponent of documentary evidence to establish circumstantial trustworthiness." *Id.* at 499. Thus, the Superior Court justifiably concluded that CFS failed to meet that standard and that the trial court did not abuse its discretion in excluding the evidence.

Similarly, in *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386 (Pa. Super. 2015), the Superior Court again considered application of the business records exception under Rule 803(6) and the Act and applied the test originally set forth in *In re Indyk's Estate*. The fact pattern in *Pautenis* is even more similar to the case at bar than that of *CFS,* as *Pautenis* involved a mortgage and promissory note that had been assigned twice during the course of the loan. As with the instant case, the company filing the foreclosure action in *Pautenis* attempted to introduce documents related to the mortgage and note which derived from records created by the prior companies.

The trial court in *Pautenis* excluded the records because it found that the documents "totally lack[ed] trustworthiness." *Id.* at 389. The lack of trustworthiness resulted from several discrepancies on the face of the records, including the absence of more than one year's worth of payment records and an unexplained $6,000 difference in the principal loan amount set forth on two of the records. *Id.* at 401-02. Additionally, the proffered witness testified that he did not know how the prior companies had created or maintained their records. *Id.* Moreover, the trial court discounted the witness's testimony that the acquiring company engaged in an extensive validation process when it obtained records from the prior companies, given the apparent errors that occurred despite the validation. Thus, we find it unsurprising that the Superior Court concluded that the trial court acted within its discretion in excluding the evidence given its supported factual

determination that the bank "failed to present complete, accurate and trustworthy records evincing the actual amount due and owing." *Id.* at 402 (internal citation omitted).

We emphasize that the facts of the case at bar are readily distinguishable from those in *CFS* and *Pautenis* and, instead, are more akin to the facts of *In re Indyk's Estate.* In contrast to the witnesses' lack of knowledge of the prior recording system in *CFS* and *Pautenis*, Schonleber testified that he was personally acquainted with the recording process used by Bank of America as it was the same process used by Bayview, which allowed him to speak to whether the information was likely to have met the requirements of Rule 803(6)(A-C), including that the record was made at or near the time of the event and that it was kept in the regular course of business. Additionally, Schonleber explained that Bayview engaged in an extensive process of "boarding" the documents, during which it checked the various figures. It is also relevant that Bayview did not merely place Bank of America's documents in its files but relied upon the documents for its business. Significantly, the records presented in this case did not include the facial lapses and errors that existed in *CFS* and *Pautenis,* or the litany of errors documented in the *Amici*'s brief that would undoubtedly cast a shadow on the trustworthiness of the documents. Accordingly, we agree with the Superior Court that the trial court acted within its discretion in admitting the evidence under the facts of this case.

We further observe that the courts in *CFS*, *Pautenis*, and this case properly looked to the circumstances of the individual cases to determine whether the elements of the business records exception were met. The fact that the courts reached opposite results does not indicate a conflict between the cases but rather distinctions in the factual circumstances. Thus, we neither adopt a bright line rule forbidding the authentication of documents recorded by a third party, nor do we endorse an automatic incorporation doctrine. Instead, we will continue to allow our trial courts to utilize their broad discretion

in evidentiary matters by applying the business record exception of Rule 803(6) and the Act to determine if the witness "can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness" subject to the opponent rebutting the evidence with any other circumstances indicating a lack of trustworthiness. *In re Indyk's Estate*, 413 A.2d at 373.

We additionally observe that Rule 803(6) provides litigants with an alternative method of authenticating documents through the use of Rule 902(11) and (12)'s certification process. Use of this process would arguably reduce the risk that a trial court will find supporting documents to be insufficiently trustworthy based on aspects of the specific documents, the recording process, or the witness's familiarity with them. Nevertheless, we emphasize that Rule 803(6) does not require certification but rather offers it as an alternative.

For the reasons set forth above, we conclude that the trial court did not abuse its discretion in admitting the documents and allowing Schonleber's testimony under the facts of this case. Accordingly, we affirm the order of the Superior Court.

Chief Justice Saylor and Justices Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.