IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael G. Molchan,         :
        Appellant         :
        :
        v.         :
        :   No. 382 C.D. 2023
Mercer County Tax Claim Bureau   :  Submitted: June 4, 2024


BEFORE:   HONORABLE ANNE E. COVEY, Judge
        HONORABLE MICHAEL H. WOJCIK, Judge (P.)
        HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE COVEY                FILED: July 16, 2024


Michael G. Molchan (Molchan) appeals from the Mercer County (County) Common Pleas Court's (trial court) March 31, 2023 order[1] denying his Petition to Set Aside and Vacate Upset Tax Sale (Petition). Molchan presents two issues for this Court's review: (1) whether the trial court erred by admitting Palmetto Posting, Inc.'s (Palmetto) July 18, 2022 field report (Report) into evidence under the Uniform Business Records as Evidence Act (Act)[2] by virtue of the agency relationship between Palmetto and the County's Tax Claim Bureau (Bureau); and (2) whether the trial court abused its discretion by admitting the Report when the authenticating witness possessed insufficient information regarding the manner in which Palmetto prepared and maintained the Report. After review, this Court reverses.

Molchan is the record owner of 445 Frank Street, Sharon, Mercer County, Pennsylvania (Property). By March 11, 2021 Delinquent Tax Reminder

---

[1] The trial court's March 31, 2023 order was entered into the trial court's docket on April 3, 2023.

[2] 42 Pa.C.S. § 6108.

Letter, sent by first-class mail to Molchan's record address, the Bureau provided courtesy notice to Molchan that the Property had been returned to the Bureau for non-payment of its 2019 and 2020 real estate taxes. By April 22, 2021 Notice of Return and Claim sent by certified mail to Molchan's record address, the Bureau notified Molchan that the Property's 2020 real estate taxes remained unpaid and warned him that his failure to pay the outstanding amount could result in the Property being sold at a tax sale (Tax Sale).

Again, as a courtesy, by March 8, 2022 Delinquent Tax Reminder Letter, sent by first-class mail to Molchan's record address, the Bureau informed Molchan that the Property had been returned to the Bureau for non-payment of its 2020 and 2021 real estate taxes. The March 8, 2022 Delinquent Tax Reminder Letter was not returned to the Bureau as undeliverable.

On June 7, 2022, the Bureau sent Molchan a Notice of Public Sale of the Property by certified mail to his record address, therein declaring that the Property would be sold at a Tax Sale on September 20, 2022, unless Molchan made a real estate tax payment by July 8, 2022. That certified mailing was returned as undeliverable. The Bureau also sent the Notice of Public Sale by certified mail to 8246 Warren Sharon Road, Masury, Ohio.[3] Molchan signed the certified mailing receipt sent to the Ohio address on June 22, 2023, and it was returned to the Bureau.

The Bureau retained Palmetto to post the Notice of Public Sale on the Property, which Palmetto did on July 18, 2022. *See* Reproduced Record (R.R.) at 15a-16a, 49a-50a. On September 2, 2022, the Bureau sent the Notice of Public Tax Sale to Molchan by first-class mail at his record address. Also on September 2, 2022, the Bureau sent the Notice of Public Tax Sale to Molchan by first-class mail

---

[3] While investigating alternative addresses for Molchan relative to another delinquent property Molchan owned, the Bureau discovered the Ohio address and added it to Molchan's tax claim records.

2

to 8246 Warren Sharon Road, Masury, Ohio. The September 2, 2022 mailings were not returned as undeliverable.

On September 20, 2022, Twenty Three, LLC purchased the Property at the Tax Sale for $17,500.00. By September 26, 2022 certified mailings to Molchan at his Pennsylvania and Ohio addresses, the Bureau notified Molchan that the Property had been sold.

On December 5, 2022, Molchan filed the Petition in the trial court challenging the Tax Sale on the basis that the Bureau did not give him proper prior notice of the Tax Sale. Molchan specifically claimed that the Bureau's posted notice failed to comply with the Real Estate Tax Sale Law (RETSL).[4] Molchan declared that if the Bureau had afforded him proper notice of the Property's Tax Sale, he would have paid the delinquent taxes. The trial court scheduled a hearing on the Petition for January 6, 2023, but rescheduled the hearing to March 31, 2023, at Molchan's request.

At the March 31, 2023 hearing,[5] the Bureau presented the testimony of the County's Department of Revenue Director Cathy Herriott (Herriott), who heads the Bureau. Herriott declared that the Bureau provided Molchan with all notice required under the RETSL. *See* R.R. at 17a. Regarding posting, Herriott testified that Palmetto posted the Notice of Public Sale on the Property on July 18, 2022, and sent the Report and a photograph of the posting to the Bureau confirming the same. *See* R.R. at 14a-16a, 29a, 49a-50a. The Bureau offered the Report into evidence as a business record of the Bureau, which the trial court admitted over Molchan's

---

[4] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803.

[5] Molchan did not attend the hearing. *See* R.R. at 6a.

3

counsel's hearsay objection. *See* R.R. at 29a, 34a-35a. That same day, the trial court denied Molchan's Petition. Molchan appealed to this Court.[6, 7]

On April 24, 2023, the trial court directed Molchan to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Appellate Rule) 1925(b) (Appellate Rule 1925(b) Statement). On May 12, 2023, Molchan timely filed his Appellate Rule 1925(b) Statement. On

---

[6] "'This [C]ourt's review of a trial court's order in a tax sale matter is limited to determining whether the trial court erred as a matter of law, rendered a decision that is unsupported by the evidence, or abused its discretion.' *City of Phila. v. Auguste*, 138 A.3d 697, 700 (Pa. Cmwlth. 2016)." *City of Phila. v. Rivera*, 171 A.3d 1, 4 n.7 (Pa. Cmwlth. 2017). Moreover, this Court's review of a trial court's evidentiary rulings "is to determine whether the trial court abused its discretion in deciding whether to admit or exclude the evidence in question." *Aiello v. Se. Pa. Transp. Auth.*, 687 A.2d 399, 401 n.2 (Pa. Cmwlth. 1996).

> "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion," but instead requires demonstration that the lower court's decision was "a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support from the evidence or the record so as to be clearly erroneous." *Polett v. Pub*[.] *Comm*[*c'ns*]*, Inc.*, . . . 126 A.3d 895, 914 ([Pa.] 2015) (internal quotation marks and alteration designations omitted).

*Bayview Loan Servicing LLC v. Wicker*, 206 A.3d 474, 482 (Pa. 2019).

[7] On January 18, 2024, Molchan's counsel, William G. McConnell, Jr., Esquire (Attorney McConnell), filed a Motion for Leave to Withdraw Appearance and to Continue Oral Argument Due to Conflict of Interest (Motion), wherein he informed this Court that, in light of his recent appointment as Mercer County Solicitor, he can no longer represent Molchan. The Bureau's counsel, William J. Madden, Esquire (Attorney Madden), also confirmed that, in light of Attorney McConnell's appointment, Attorney Madden is no longer the Mercer County Solicitor and no longer represents the Bureau. By January 31, 2024 Order (Order), this Court granted the Motion. The Order declared that if new counsel did not enter an appearance on Molchan's behalf by March 15, 2024, the matter would be submitted for disposition on the briefs previously filed, without oral argument. In addition, this Court stated that Attorney Madden would remain the Bureau's counsel of record until such time as new counsel enters an appearance on the Bureau's behalf. Because no counsel entered an appearance on Molchan's behalf by March 15, 2024, and new counsel has not entered an appearance on the Bureau's behalf, on April 2, 2024, this Court ordered this matter be submitted for disposition on the briefs previously filed, without oral argument, and with Attorney Madden as the Bureau's counsel.

May 25, 2023, the trial court filed its opinion pursuant to Appellate Rule 1925(a) (Appellate Rule 1925(a) Opinion).

Initially, "the collection of taxes may not be implemented without due process of law." *Husak v. Fayette Cnty. Tax Claim Bureau*, 61 A.3d 302, 312 (Pa. Cmwlth. 2013). This Court has explained:

> A property owner's right to notice "prior to commencing with an upset tax sale [is] established pursuant to the Due Process Clause of the Fourteenth Amendment to the United States [(U.S.)] Constitution[, U.S. Const. amend. XIV, § 1,] and by the [RETSL]." *Rice v. Compro Distrib*[.]*, Inc.*, 901 A.2d 570, 574 (Pa. Cmwlth. 2006). The [U.S.] Supreme Court has held that due process is implicated in any taking of property for the collection of taxes, stating:
>
> > [P]eople must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property. But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking.
>
> *Jones v. Flowers*, 547 U.S. 220 . . . (2006). Due process is satisfied when the [tax claim b]ureau, before commencing with a tax sale, "provide[s] 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id*. (quoting *Mullane v. Cent*[.] *Hanover Bank & Tr*[.] *Co.*, 339 U.S. 306 . . . (1950)).

*In re Consol. Reps. & Return by the Tax Claim Bureau of Northumberland Cnty. of Props.*, 132 A.3d 637, 644 (Pa. Cmwlth. 2016) (*en banc*) (*Appeal of Neff*).

To ensure Pennsylvania property owners are afforded proper due process, the General Assembly enacted Section 602 of the RETSL, 72 P.S. § 5860.602, wherein it specified the forms of notice a tax claim bureau shall provide

5

a property owner before exposing a property to an upset tax sale.[8] Section 602(e)(1) of the RETSL requires a tax claim bureau to provide notice of a tax sale "[a]t least thirty (30) days before the date of the sale, by [U.S.] certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by [the RETSL]." 72 P.S. § 5860.602(e)(1). In addition, Section 602(a) of the RETSL specifies that, at least 30 days before the sale, the Bureau shall publish notice thereof in a legal journal and at least 2 newspapers of general circulation. *See* 72 P.S. § 5860.602(a). Section 602(e)(3) of the RETSL further mandates that "[e]**ach property scheduled for sale shall be posted at least** [**10**] **days prior to the sale**." 72 P.S. § 5860.602(e)(3) (emphasis added).

"[S]trict compliance with the [RETSL's] notice provisions is essential to prevent the deprivation of property without due process." *Est. of Marra v. Tax Claim Bureau of Lackawanna Cnty.*, 95 A.3d 951, 956 (Pa. Cmwlth. 2014).

> **In all tax sale cases**, **the tax claim bureau** "**has the burden of proving compliance with the statutory notice provisions**." *Krawec v. Carbon* [*Cnty.*] *Tax Claim Bureau*, 842 A.2d 520, 523 (Pa. Cmwlth. 2004). Section 602 [of the RETSL] requires three different forms of notice to property owners prior to an upset tax sale: publication, posting, and mail. "**If any of the three types of notice is defective**, **the tax sale is void**." *Gladstone v. Fed*[.] *Nat*[*'l*] *Mortg*[.] *Ass*[*'n*], 819 A.2d 171, 173 (Pa. Cmwlth. 2003).

*Appeal of Neff*, 132 A.3d at 644-45 (emphasis added; footnote omitted). "[T]he courts are responsible for applying the [RETSL] in such a manner as to afford property owners due process of law with respect to tax sales." *Schooley v. Beaver Cnty. Tax Claim Bureau*, 4 A.3d 797, 800 (Pa. Cmwlth. 2010).

---

[8] Section 601(a)(3) of the RETSL, 72 P.S. § 5860.601(a)(3), sets forth additional notice requirements for owner-occupied properties.

In the instant appeal, Molchan challenges the Bureau's posted notice, claiming that the Bureau's evidence of posting was based on inadmissible hearsay. Hearsay is an out-of-court statement offered for the truth of the matter asserted.[9] *See G.W. v. Avonworth Sch. Dist.*, 297 A.3d 28 (Pa. Cmwlth. 2003). Pennsylvania Rule of Evidence (Rule) 802 specifically prohibits reliance on hearsay evidence unless it is otherwise admissible under one of the hearsay exceptions. *See* Pa.R.E. 802. The proponent of the hearsay statement has the burden of convincing the court that it is admissible. *See Commonwealth v. Smith*, 681 A.2d 1288 (Pa. 1996).

"The business records exception has been incorporated into Pennsylvania law through the [Act] . . . and [Rule] 803(6) . . . respectively." *Bayview Loan Servicing LLC v. Wicker*, 206 A.3d 474, 483 (Pa. 2019). The Act declares:

> A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the **mode of its preparation**, **and** if it was **made in the regular course of business at or near the time of the act**, condition or event, **and** if, in the opinion of the tribunal, **the sources of information**, **method and time of preparation were such as to justify its admission**.

42 Pa.C.S. § 6108(b) (emphasis added). Rule 803(6)[10] similarly provides that the rule against hearsay will not exclude "[r]ecords of a [r]egularly [c]onducted [a]ctivity" if:

---

[9] Writings are statements under Pennsylvania Rule of Evidence 801(a). *See* Pa.R.E. 801(a).

[10] Rule 803(6) generally tracks Federal Rule of Evidence 803(6), which states:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . . .
>
> **(6) Records of a Regularly Conducted Activity.** A record of an act, event, condition, opinion, or diagnosis if:

7

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business[,]"[] which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) [(relating to certified domestic or foreign records of a regularly conducted activity)] or with a statute permitting certification; and

(E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

The Act and [] Rule [803(6)] substantially overlap in that both generally require that a custodian or other qualified witness testify that the record was made at or near the time of the event recorded and that the record was kept in the regular course of business. Moreover, both provide for the

---

**(A)** the record was made at or near the time by--or from information transmitted by--someone with knowledge;

**(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

**(C)** making the record was a regular practice of that activity;

**(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

**(E)** the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

F.R.E. 803(6).

8

trial court to make a determination in regard to whether the circumstances surrounding the record justify its admission or indicate a lack of trustworthiness.

*Bayview*, 206 A.3d at 483 (quotation marks, citations, and footnote omitted).

This Court clarified:

Under [the Act], it is not essential to produce either the person who made the entries or the custodian of the record at the time the entries were made or that the witness qualifying the business records even has personal knowledge of the facts reported in the business record. **As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness of the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence**.

*Virgo v. Workers' Comp. Appeal Bd.* [*(Cnty. of Lehigh-Cedarbrook)*], 890 A.2d 13, 20 (Pa. Cmwlth. 2005) (citations omitted).

*Turner v. Unemployment Comp. Bd. of Rev.*, 899 A.2d 381, 386 (Pa. Cmwlth. 2006) (emphasis added).

"In regard to the business records exception, the circumstantial trustworthiness arises from the regularity with which business records are kept and the reliance that businesses place on the accuracy of those records." *Bayview*, 206 A.3d at 483. Courts "look[] to the circumstances of the individual cases to determine whether the elements of the business records exception were met." *Id*. at 486. "As the finder of fact, the trial court [is] in the best position to determine the trustworthiness of the . . . documents, as well as the credibility of [the offering party's witness] testimony." *Sycamore Rest. Grp., LLC v. Stampfi Hartke Assocs., LLC*, 174 A.3d 651, 659 (Pa. Super. 2017). Thus, "[w]hether a document should be

admitted under the business records exception to the hearsay rule is within the discretion of the trier of fact provided that his or her discretion is exercised within the dictates of [the Act]." *Toth v. Workers' Comp. Appeal Bd. (USX Corp.)*, 737 A.2d 838, 841 (Pa. Cmwlth. 1999).

Molchan argues that the trial court erred by admitting Palmetto's Report into evidence as proof that the Bureau properly posted the Property based solely on the agency relationship between Palmetto and the Bureau. Specifically, Molchan asserts that Pennsylvania has not adopted a rule of incorporation providing that a record prepared by an agent is the record of the principal or that when a business takes custody of a record, the record is deemed to be made by the acquiring business.

At the trial court hearing, Herriott explained that the County has had a contract with Palmetto for approximately five years, under which Palmetto has successfully posted notices on the Bureau's behalf. *See* R.R. at 14a. Herriott declared that, when seeking to have Palmetto post a tax sale notice, the Bureau provides Palmetto with the property address, plus longitude, latitude, and tax map numbers and, thereafter, Palmetto provides the Bureau a report and a photograph of the posting, as it did in this case. *See* R.R. at 15a-16a, 29a, 35a-36a, 49a-50a. Herriott further reported that she pre-approved the posting as to form and substance and, thereafter, the Bureau searched the Property on Google Earth to confirm posting. *See* R.R. at 36a, 51a.

Herriott admitted that neither she nor any other County employee physically posted the Tax Sale notice on the Property, and Palmetto was not available at the hearing to offer testimony. *See* R.R. at 17a, 19a. Herriott asserted that Palmetto prepared the Report and provided it to the Bureau, which offered it to the trial court as a business record. *See* R.R. at 19a-20a. Herriott confirmed:

10

Q. All the documents that you have identified in [the Bureau's] file are kept in the regular course of [] business at the . . . Bureau?

A. Yes.

Q. And they are all prepared with your prior reviews of contents of all those notices and documents?

A. Correct.

. . . .

Q. Are all the documents that you have identified here filed, created, or copied contemporaneous to the events that they represent?

A. Yes.

Q. And they are all created in the regular course of [the Bureau's] business?

A. Yes.

Q. The business of the . . . Bureau, which is the collection of delinquent taxes?

A. Correct.

R.R. at 27a-28a.

Relying solely on Herriott's testimony, the trial court admitted the Bureau's entire claim file for the Property, including Palmetto's Report, as proof that it properly posted the Notice of Public Sale at the Property, concluding:

> [T]he explicit provisions in the [Act] [] empower tribunals (e.g., judges) to assess whether the sources of information, the method employed, and the timing of preparation were sufficient to warrant the admission of the evidence. Exercising its discretion, this [trial c]ourt determined the sources of information, the method employed, and the timing of preparation were satisfactory to justify the admission of the evidence.

11

Appellate Rule 1925(a) Op. at 4. The trial court reasoned, based on agency law principles:

> During all activities relevant to this case, Palmetto . . . [was] acting as agent[] of [the Bureau] under the express authority of [the Bureau]. There is clear evidence of [the Bureau's] explicit desire to delegate authority to Palmetto . . . as agent[] on [its] behalf, the acceptance of Palmetto . . . of said responsibility, and a mutual understanding between the parties of [the Bureau's] retention of control over all matters relevant to the principal-agent relationships. As Palmetto . . . acted as agent[] on behalf of [the Bureau] during all periods relevant to this case, all documentation created under said agency was within the normal scope of business as if it were created by the [Bureau].

*Id*. at 4-5 (footnotes omitted). The trial court did not cite to any legal authority for its conclusion that "all documentation [Palmetto] created under [its] agency [relationship with the Bureau] was within the normal scope of business as if it [was] created by the [Bureau]." *Id*. at 5.

> Indeed,
>
> "[a]n agent is one who acts in the place and stead of another." *Valentine v. Packer*, 5 Pa. 333, 334 (1847). In the context of agency law, we have explained that "[t]he law is clear in Pennsylvania that the three basic elements of agency are: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking[,] and the understanding of the parties that the principal is to be in control of the undertaking." *Basile v. H & R Block, Inc.*, . . . 761 A.2d 1115, 1120 ([Pa.] 2000) (internal quotation marks omitted) (citing *Scott v. Purcell*, . . . 415 A.2d 56, 60 ([Pa.] 1980) (quoting Restatement (Second) of Agency § 1, Comment b ([Am. Law Inst.] 1958)).

*Commonwealth v. Britton*, 229 A.3d 590, 597-98 (Pa. 2020).

Moreover, although the Pennsylvania Superior Court has expressly declined to adopt the federal incorporation rule,[11] *see Commonwealth Fin. Sys., Inc. v. Smith*, 15 A.3d 492, 500 (Pa. Super. 2011) ("Regardless of a 'nationwide trend' and 'clear federal precedent' for allowing the introduction of business records consisting of documents generated by third parties, the Pennsylvania Supreme Court has not seen fit to adopt the [federal] rule of incorporation[.]"), the Pennsylvania Supreme Court has held:

> [W]e neither adopt a bright line rule forbidding the authentication of documents recorded by a third party, nor do we endorse an automatic incorporation doctrine. Instead, we will continue to allow our trial courts to utilize their broad discretion in evidentiary matters by **applying the business record exception** of Rule 803(6) and the Act to determine **if the witness "can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness**" subject to the opponent rebutting the evidence with any other circumstances indicating a lack of trustworthiness. *In re Indyk's Est*[.], 413 A.2d [371,] 373 [(Pa. 1979)].

*Bayview*, 206 A.3d at 486 (emphasis added); *see also Bristol Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 616 (Pa. Cmwlth. 2019) ("[T]he person who received the document can [] authenticate what he or she received and acted upon."); 1 West's Pa. Prac., Evidence § 803(6)-1 (4th ed. 2023 update). In fact, in *In re Dauphin County Tax Sale of 2013* (Pa. Cmwlth. No. 2306 C.D. 2014, filed Jan.

---

[11] Under Federal Rule of Evidence 803(6), federal courts have recognized a doctrine under which documents prepared by a third party may be admissible as business records of the presenting entity if the presenting entity regularly incorporates the documents into its own records and relies upon their accuracy, and there are other circumstances indicating the documents' trustworthiness. *See Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338 (Fed. Cir. 1999).

8, 2016),[12] this Court upheld the admission of Palmetto's field report based on Palmetto's agency relationship with the tax claim bureau and the tax claim bureau deputy director's testimony that, *inter alia*, established that she was the custodian of the property owners' file and detailed how Palmetto prepared and maintained the field report, and the time of Palmetto's posting was evident from the field report itself.[13] However, here, because such supporting evidence was not provided, as more fully explained below, the trial court abused its discretion by admitting Palmetto's Report based solely on an agency relationship between Palmetto and the Bureau.

Molchan argues that the trial court abused its discretion by concluding that Herriott's testimony alone offset the Report's hearsay character. Specifically, Molchan asserts that Herriott did not possess sufficient information regarding the manner in which Palmetto posted the Property and prepared and maintained the Report.

In *Dauphin County Tax Sale*, the trial court admitted into evidence the tax claim bureau's entire file, including Palmetto's field report, based solely on the tax claim bureau deputy director's testimony

> that she was the custodian of the [b]ureau's records, that [Palmetto's field report] was developed by the [b]ureau's agent, that such documents are normally kept by the [b]ureau, that those files are kept in her office, and that the documents are signed by the posting agent and notarized. [The deputy director] testified that the [b]ureau's posting

---

[12] Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

[13] Most often, tax claim bureaus present Palmetto's field reports with Palmetto's live testimony, *see Matter of Krzysiak*, 151 A.3d 292 (Pa. Cmwlth. 2016); deposition testimony, *see In re Upset Sale, Tax Claim Bureau of Tioga Cnty., Control No. 012488*, 305 A.3d 1118 (Pa. Cmwlth. 2023); affidavit, *see In Re Tax Sale of Real Prop. Situate in Paint Twp., Somerset Cnty.*, 865 A.2d 1009 (Pa. Cmwlth. 2005); or joint stipulation, *see Zelno v. Lyons*, 245 A.3d 1185 (Pa. Cmwlth. 2021) (wherein the parties also admitted Palmetto's contract and the municipality's adopting resolution).

> agent posts the properties subject to the tax sale and then provides the [b]ureau with files on a disc containing the pictures and other information.

*Id.*, slip op. at 11-12 (internal citations omitted). This Court upheld the trial court's decision "conclud[ing] that the testimony and the [f]ield [r]eport, itself, contain sufficient indication of reliability to warrant its admission [such that] we cannot say that the trial court abused its discretion." *Id.* at 12. That was not the case here.

Although, as fact-finder, the trial court was in the best position to determine the credibility and reliability of Herriott's testimony, *see Sycamore Rest. Grp., LLC*, its discretion must be exercised "within the dictates of [the Act]." *Toth*, 737 A.2d at 841. In particular, Herriott's testimony had to "provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness . . . to offset the hearsay character of the evidence." *Turner*, 899 A.2d at 386 (quoting *Virgo*, 890 A.2d at 20). Notwithstanding the trial court's conclusion that Herriott's testimony established that Palmetto prepared the Report in the ordinary course of its business at or near the time it posted the Property and Herriott made it part of the Bureau's file, *see* R.R. at 34a, 38a; *see also* Appellate Rule 1925(a) Op. at 6, the record evidence did not support the trial court's conclusion.

Based on this Court's review of the record, **Herriott never stated that she was the custodian of the Bureau's records or Molchan's file**, **nor did she offer any testimony regarding the manner in which Palmetto prepared and maintained the Report or the timing of Palmetto's preparation in relation to the posting,**[14] **which information is not evident from the Report itself**. *See* R.R. at 49a. Herriott merely assented that the documents in the Bureau's file are kept in

---

[14] The Report reflects Palmetto's representation that it posted the Property on July 18, 2022, at 10:38 a.m., but does not show who conducted the posting or when the Report was generated and sent to the Bureau. *See* R.R. at 49a.

the regular course of the Bureau's business, *see* R.R. at 27a, and the Report was "filed, created, or copied contemporaneous to the events that they represent[.]" R.R. at 28a. **The mere fact that the Bureau possesses the Report and calls it a business record is not sufficient to make it so**. *See Sycamore Rest. Grp., LLC*. Moreover, although Herriott claims to have confirmed Palmetto's posting on Google Earth, *see* R.R. at 36a, she did not specify when she did so, and the Google Earth photograph admitted as part of the Bureau's file is dated March 23, 2023, six months *after* the Tax Sale. *See* R.R. at 51a. Therefore, based on the record before the trial court, **Herriott was not a qualified witness whose testimony alone was sufficient to offset the Report's hearsay character**.

Consequently, while the Bureau *could have* offered the testimony of a qualified witness to satisfy the business records exception to the hearsay rule based on its agency relationship with Palmetto, *it did not do so* here. In the absence of testimony or other evidence regarding the manner and timing in which Palmetto prepared and maintained the Report, and other indices of the Report's trustworthiness, *see* 42 Pa.C.S. § 6108(b), the trial court abused its discretion by admitting the Report into evidence. Because the Bureau did not proffer admissible evidence of the Property's posting, one of the three required forms of Tax Sale notice, the notice was defective and, thus, the Tax Sale was void. *See Appeal of Neff*.

Based on the foregoing, the trial court's order is reversed.

_____
ANNE E. COVEY, Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael G. Molchan,                :
                Appellant     :
                                 :
        v.                     :
                                 :   No. 382 C.D. 2023
Mercer County Tax Claim Bureau   :

## O R D E R

AND NOW, this 16th day of July, 2024, the Mercer County Common Pleas Court's March 31, 2023 order is reversed.

_____

ANNE E. COVEY, Judge