J-S57030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| HARRY MARTIN | IN THE SUPERIOR COURT |
| Appellant | OF PENNSYLVANIA |
| v. | |
| JOHN SEEDORF | |
| Appellee | No. 876 MDA 2019 |

Appeal from the Order Entered May 1, 2019
In the Court of Common Pleas of Luzerne County
Civil Division at No: 2018-02265

BEFORE:  BOWES, J., STABILE, J. AND MUSMANNO, J.

MEMORANDUM BY STABILE, J.:                **FILED NOVEMBER 27, 2019**

Appellant, Harry Martin, appeals from an order granting summary judgment against him in this personal injury action on the ground that his action was time-barred under Pennsylvania's two-year statute of limitations, 42 Pa.C.S.A. § 5524.  Appellant contends that the statute did not begin running until twenty-three days after he was involved in a motor vehicle accident, because only at that time did he realize he suffered a "substantial" injury with "significant" damages.  We affirm.

On February 13, 2016, Appellant was involved in a motor vehicle accident with Appellee, John Seedorf.  A police report of the accident stated that Appellant had a "suspected minor injury."  Second Amended Complaint ("SAC"), ¶ 9.  Two years and nine days later, on February 22, 2018, Appellant filed a writ of summons.  Subsequently, Appellant filed a complaint, an amended complaint and finally the SAC.

Appellant averred in the SAC that prior to the accident, his right wrist was asymptomatic. *Id.* at ¶ 13. After the accident, he took one month off from work in the hope that rest would aid his recovery. *Id.* at ¶ 11. On or about March 7, 2016, however, he

> discovered that the pain in his right wrist became excruciating, contrary to his and his medical providers' expectations that his injury would improve in a relatively short period of time; to the degree that [he] felt compelled to seek medical treatment as soon as possible, although the initial bruises and traumas he endured had initially seemed as though they would improve within a month or two.

*Id.* at ¶ 11. "Because of his unique physiology," Appellant continued, "the trauma caused by the impacts of the initial accident led to an unexpected and unnatural accelerated version of Kienbock's disease because of the short time over which his lunate bone became completely deprived of blood and oxygen." *Id.* at ¶ 18. The "sudden onset" of late-stage Kienbock's disease required "months of treatment" culminating in surgery on February 7, 2017. *Id.* at ¶¶ 20, 26. "But for [Appellee's] negligent ... driving," Appellant concluded, he would not have endured pain and suffering and would have enjoyed a much greater quality of life. *Id.* at ¶ 30.

Appellee raised the statute of limitations as an affirmative defense in his responsive pleading and then in a motion for summary judgment. In response, Appellant argued that the statute did not begin running until March 7, 2016, twenty-three days after the accident, when he learned that his injury was more significant than he originally understood it to be.

On May 1, 2019, the trial court entered an opinion and order granting summary judgment to Appellee. On May 31, 2019, Appellant filed a timely notice of appeal to this Court.

Appellant raises the following issues in this appeal:

A. Whether the trial court erred as a matter of law and/or abused the discretion afforded to trial courts by granting a Motion for Summary Judgment through construing the pleadings in favor of the moving party and failed to recognize that [Appellant]'s cause of action did not accrue until he had a significant injury with substantial damages tied to the fault of [Appellee] on or about March 7, 2016.

B. Whether the trial court erred as a matter of law and/or abused the discretion afforded to trial courts by declining to grant a hearing to [Appellant] on the jury issue of whether [Appellant] exercised reasonable diligence in not discovering [the seriousness of his injury] until he experienced excruciating pain in his wrist and a medical professional described an uncharacteristic lack of degenerative changes associated with what otherwise appeared to be late-stage Kienbock's disease[,] which led to an excruciatingly painful necrosis of his right lunate bone [and showed] that he had a significant injury with substantial damages tied to the fault of [Appellee].

C. Whether the trial court erred as a matter of law and/or abused the discretion afforded to trial courts by granting a Motion for Summary Judgment on the issue of whether [Appellant]'s leg injury, the significant exacerbation of which occurred as a direct and proximate result of his emergent need to attend to the excruciating pain in his right wrist on or about March 7, 2019, and was, therefore, directly attributable to the alleged negligence of [Appellee,] in spite of the requirement of viewing the pleadings in a light most favorable to the non-moving party and that the actual date of the accrual of that injury was when it became a significant injury with substantial damages.

D. Whether the trial court erred as a matter of law and/or abused the discretion afforded to trial courts by assuming that [Appellant]'s initial choice to rest his leg was based, a choice afforded to him at any time he chooses, as an independent

trucker, in some significant way, upon what initially only appeared to be a minor insignificant injury to his wrist, without substantial damages, affording him no means of discovering the wrist injury until the pain became excruciating and a doctor explained to him that the minimal degenerative changes to his wrist did not comport with the late-stage Kienbock's disease which his symptoms otherwise reflected[,] leading him to inescapably conclude that his new significant injury with substantial damages was directly tied to the fault of [Appellee].

E. Whether the trial court erred as a matter of law and/or abused the discretion afforded to trial courts by failing to recognize that [Appellant]'s wrist injury was a latent injury, producing no significant pain, evidencing no substantial damages or need for treatment, and leading to no prior doctor's visits, until on or about March 7, 2016, when for the first time, the pain in his wrist became excruciating, alerting him to seek medical treatment, causing him to mobilize when he could have otherwise rested, and leading him to the realization when a medical professional explained to him that the lack of degenerative changes in his wrist was uncharacteristic for the late-stage Kienbock's disease symptoms he was otherwise experiencing, leading [Appellant] to discover for the first time that his new emergent significant injury (which may not have occurred in a million other patients who experienced the same initial minor and insignificant injury), which then, for the first time, produced a situation where Martin would incur substantial damages, was directly tied to the negligence of [Appellee].

F. Whether the trial court erred as a matter of law and/or abused the discretion afforded to trial courts by failing to recognize that, absent [Appellant]'s sudden and urgent need to address the excruciating pain that struck without warning on or about March 7, 2016, the extraordinary exacerbation of his leg injury resulting in severe Achilles tendon issues, would not have occurred, resulting for the first time in a significant injury, with substantial damages, requiring medical attention for the first time, attributable to the fault of [Appellee], and, therefore, resulting in the accrual of that cause of action as well.

Appellant's Brief at 4-8.

When this Court reviews an order granting summary judgment,

> [o]ur scope of review . . . is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion. Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Bayview Loan Servicing LLC v. Wicker*, 163 A.3d 1039, 1043-44 (Pa. Super. 2017), *aff'd*, 206 A.3d 474 (Pa. 2019). Moreover, "[i]n response to a summary judgment motion, the nonmoving party cannot rest upon the pleadings, but rather must set forth specific facts demonstrating a genuine issue of material fact." *Bank of Am., N.A. v. Gibson*, 102 A.3d 462, 464 (Pa. Super. 2014).

The seven questions raised in Appellant's brief reduce to one argument: the statute of limitations does not bar Appellant's action because the statute only began to run on March 7, 2016, the date a "significant" injury with "substantial" damages manifested in the form of excruciating wrist pain from Kienbock's disease. We disagree.

Pennsylvania law requires individuals to commence an action to recover damages for injuries to the person caused by another's negligence within two years. 42 Pa.C.S.A. § 5524. Generally, the statute of limitations begins to run "as soon as the right to institute a suit arises." *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983). In

most cases, the statute of limitations begins to run on the date the plaintiff sustains an injury. ***Haines v. Jones***, 830 A.2d 579, 585 (Pa. Super. 2003). "Lack of knowledge, mistake, or misunderstanding does not toll the running of the statute of limitations." ***Pocono International Raceway***, 468 A.2d at 471. Once the plaintiff becomes aware of an injury, and who occasioned it, he has a duty to investigate the matter and commence a cause of action. ***Wilson v. El-Daief***, 964 A.2d 354, 356 (Pa. 2009).

There is no dispute in this case that the motor vehicle accident occurred on February 13, 2016. Appellant failed to commence this action until February 22, 2018, the date he filed a praecipe for a writ of summons. Appellant admitted in the SAC that he knew on the date of the accident that he had sustained some injuries (bruising and trauma), and that he took off from work to recuperate. Thus, the statute of limitations began running on February 13, 2016, and his action is time-barred because he filed his writ of summons nine days after the statute expired.

Nonetheless, Appellant argues at length that his cause of action did not accrue until he realized he had a "significant" injury with "substantial" damages as a result of Appellee's negligence. Again, we disagree.

"A cause of action accrues upon actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, **without the necessity of notice of the full extent of the injury**, the fact of actual negligence, or precise cause." ***Carlino v. Ethicon, Inc.***,

208 A.3d 92, 103 (Pa. Super. 2019) (emphasis added). The SAC makes clear that Appellant immediately knew at the time of the accident that that he suffered **some** injury. Indeed, the SAC avers that immediately after the accident, he took a month off from work in the hope that bruising and swelling from the accident would subside. Thus, the statute of limitations began running on the date of the accident, even if he did not know the full extent of his injuries at that time.

Three decisions cited by Appellant in support of tolling the statute of limitations, **Bond v. Gallen**, 469 A.2d 556 (Pa. 1983), **Walls v. Scheckler**, 700 A.2d 532 (Pa. Super. 1997), and **Nicolau v. Martin**, 195 A.3d 880, 892 (Pa. 2018), are distinguishable.

In **Bond**, the plaintiff was involved in a motor vehicle accident in February 1977 but did file suit until April 1979, more than two years later. The plaintiff contended that under the No-Fault Act, 40 Pa.C.S.A. §§ 1009.101-1009.701 (repealed in 1984), she did not have a right of action, and the statute of limitations did not begin running, until she knew that her medical expenses exceeded $750.00. The Supreme Court agreed with the plaintiff:

> The clear language of the Act states that a party does not have a cause of action unless and until medical expenses exceed $750[.00] . . . [Therefore,] the two-year statute of limitations on tort actions allowed by the No-Fault Act does not begin to run until the claimant knows or, exercising reasonable diligence, should know that the claimant's medical and/or dental losses exceed [the $750.00] threshold.

*Id.*, 469 A.2d at 558. On its face, **Bond** does not apply to the present case. The legislature repealed the No-Fault Act and its medical expense threshold provision over thirty years ago, and Appellant does not point to any similar legislative threshold under current law that he must meet in order to trigger the statute of limitations.

In **Walls**, the plaintiff selected the "limited tort" option when she purchased automobile insurance. As a result, under the Motor Vehicle Financial Responsibility Law ("MVFRL"),[1] 75 Pa.C.S.A. §§ 1701-1799.7, she could recover non-economic damages only if she suffered "serious injury," that is, "personal injury resulting in death, serious impairment of bodily function or permanent serious disfigurement." 75 Pa.C.S.A. § 1702. The plaintiff was involved in a motor vehicle accident on September 27, 1991 but did not file suit until September 30, 1993. Her injuries initially appeared to be minor bruises and contusions, but she alleged that she ultimately lost the use of her tempro-mandibular joint in her jaw. The trial court held that the plaintiff's action was time-barred and entered summary judgment in favor of the defendant. This Court reversed and remanded for further proceedings, reasoning that "if [the plaintiff's] allegations are true, and [she] only discovered that her facial injury was a 'serious injury' when she eventually

---

[1] The MVFRL is the successor to the No-Fault Act, the act under review in **Bond**.

lost the use of her TM joint, then the statute of limitations should not have started to run until said discovery." *Id.*, 700 A.2d at 534. In the present case, Appellant does not allege that he is a limited tort plaintiff. Therefore, Appellant cannot take advantage of *Walls'* decision that a limited tort plaintiff's right of action does not accrue until he knew or should have known that he incurred a "serious injury."[2]

In *Nicolau*, the plaintiff suffered a tick bite in 2001 and underwent four Lyme disease tests over the next several years. The test results for Lyme disease were negative, and her physicians diagnosed with multiple sclerosis instead. In 2009, another health practitioner, Nurse Rhoads, suggested that the plaintiff's Lyme disease tests yielded false negatives and recommended that the plaintiff undergo a different test. At first, the plaintiff declined because she lacked health insurance and could not pay for it out of pocket, but she later agreed to take the test. On February 13, 2010, the test came back positive for Lyme disease. On February 10, 2012, the plaintiff filed a complaint against various medical providers alleging that they were negligent for failing to diagnose Lyme disease. The trial court entered summary judgment for the physicians under the statute of limitations. The Supreme

---

[2] Notably, a panel of this Court recently criticized *Walls* as "just plain wrong," because "the general rule in Pennsylvania regarding car accident cases is that the statute of limitations begins to run for an injured plaintiff on the day of the accident." *Varner-Mort v. Kapfhammer*, 109 A.3d 244, 248 (Pa. Super. 2015).

Court reversed, reasoning that a jury should decide whether the plaintiff knew or should have known more than two years before she filed suit whether her physicians had misdiagnosed her medical condition:

> [W]e conclude that it is within the province of a jury to determine whether an untrained lay person who had been repeatedly and definitively diagnosed with MS by several previous physicians, had four prior negative Lyme disease tests, and lacked health insurance to cover the costs of further diagnostic testing reasonably should have known that she suffered from Lyme disease after Nurse Rhoads informed her of a "probable" diagnosis of that disease based on her clinical symptoms, and when some of her symptoms improved after taking antibiotics prescribed for that condition.... Moreover, it is for the jury, and not a court, to determine whether a person in [the plaintiff's] circumstances acted reasonably in delaying the administration of a fifth Lyme disease test to confirm Nurse Rhoads' probable diagnosis. We reach this conclusion keeping in mind that the appropriate formulation of discovery rule jurisprudence applies a reasonable-diligence requirement, as opposed to an all-vigilance one.

*Id.* at 895 (quotations and citations omitted).

The facts in the present motor vehicle accident case, however, are materially different from the intricate circumstances in *Nicolau*. In motor vehicle accident cases, the statute of limitations begins to run on the date of the accident, *Varner-Mort*, 109 A.3d at 248, due to the obvious connection between the accident and any post-accident symptoms of injury. We see no reason to eschew that principle here. While Appellant's injuries might not have fully revealed themselves until one month after the accident, their nexus with the accident was still clear. Consequently, the statute of limitations began running on the date of Appellant's accident, and the present lawsuit,

filed more than two years after the accident, is time-barred under the statute of limitations.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/2019