J-A20027-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTI LYNN CANNON | : | |
| | : | |
| Appellant | : | No. 1592 WDA 2019 |

Appeal from the Judgment of Sentence Entered September 10, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0000800-2018

BEFORE:  BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    FILED NOVEMBER 19, 2020

Appellant, Christi Lynn Cannon, appeals from the September 10, 2019 judgment of sentence[1] imposing seven years' probation and ordering Appellant to pay restitution in the amount of $86,380.00 following Appellant's conviction, in a non-jury trial, of theft by unlawful taking or disposition – moveable property.[2]  We affirm.

The trial court summarized the factual history as follows:

_____

[1] The trial court entered its judgment of sentence on September 10, 2019. Appellant filed a post-sentence motion that the trial court denied on September 24, 2019.  "[I]n criminal matters an appeal properly lies from the judgment of sentence made final by the disposition of post-sentence motions." Commonwealth v. Enix, 192 A.3d 78, 79 n.1 (Pa. Super. 2018) (citation omitted).  Therefore, Appellant's appeal properly lies from the September 10, 2019 judgment of sentence.  The case caption has been corrected accordingly.

[2] 18 Pa.C.S.A. § 3921(a).

[F]rom 2011 through 2017, [Appellant] was employed by [Glenshaw Steel and Supply Company ("Glenshaw Steel")] as a secretary. John Pelch ("Pelch") is the general manager at Glenshaw Steel, and [] worked in that capacity for 18 years. Glenshaw Steel utilized the services of [Paychex] to process and pay [its] payroll. Pelch, as general manager of Glenshaw Steel, was familiar with [Paychex] and [its] payroll system. As part of [Appellant's] secretarial duties, she would assist Pelch in submitting hours for all Glenshaw Steel employees to [Paychex]. [Appellant's] other job functions included paying Glenshaw Steel's bills, making deposits, answering [the telephone], and other general secretarial duties. As she was in charge of paying Glenshaw Steel's bills, [Appellant] had access to the company['s] checkbook and was authorized to sign checks on behalf of Glenshaw Steel. In October 2017, Pelch overheard [Appellant reporting] hours to [Paychex]. In that telephone call, [Appellant] submitted 40 hours as her hours worked for that pay period. Pelch became concerned after hearing this [telephone] call, as [Appellant] generally only worked 20-25 hours per week.

Pelch contacted [Paychex] and obtained paper copies of Glenshaw Steel's payroll records to determine how much [Appellant] had been paid and the number of hours on her paychecks. Pelch noticed a discrepancy between the number of hours worked and the number of hours [] paid. Pelch was unable to testify as to the actual number of hours worked by [Appellant] each week, as he did not require [Appellant] to maintain [a] time card.

After receipt of these records, Pelch conducted an investigation into the activity [reflected] in Glenshaw Steel's bank accounts. Pelch found checks written by [Appellant] that were made payable to herself that were not authorized withdrawals. [At trial, t]he Commonwealth, through Pelch, submitted copies of canceled checks that were made payable to [Appellant] for various amounts in 2016 and 2017. Pelch testified that he was familiar with [Appellant's] signature and that the bank accounts and checks were Glenshaw Steel's bank accounts and checks. [The trial court] reviewed [Commonwealth] Exhibit 2 and found that the total amount taken by [Appellant] for checks written to herself totaled $86,380.[00.] Pelch testified that [Appellant] was not authorized to make checks payable to herself, and did not have authorization to withdraw these funds.

Pelch also testified that there were numerous bills paid out of Glenshaw Steel's bank accounts to various companies on behalf

of [Appellant]. In support of this testimony, [the Commonwealth] presented a written summary of charges [(Commonwealth Exhibit 3)] that [Pelch] found in the bank statements that were not debts owed by Glenshaw Steel.

Detective Shawn Stelitano testified that he [was] a full[-]time police [] detective with [the] Shaler Township Police [Department, in Shaler Township, Pennsylvania,] and was employed in that capacity on November 1, 2017. On that date, Don Beyerl[,] from Glenshaw Steel[,] filed a report of a theft[] and named [Appellant] as the suspect. [Appellant] agreed to participate in an interview with Detective Stelitano on November 1, [2017]. After receiving her Miranda[3] warnings, [Appellant] waived her Miranda rights and agreed to speak with [Detective Stelitano]. [Appellant's] mother was present in the room with [Appellant] and Detective Stelitano during this interview. [The trial court found] as credible Detective Stelitano's testimony that the interview was not recorded.

During [Appellant's] verbal interview, she admitted that she did not have authorization to draft the checks made payable to herself. When asked whether she had a drug or gambling problem that caused her to take the funds, she replied[,] that "she was just bad with bills and she needed the money to pay the bills." [Appellant] also made a written statement wherein she stated that she was sorry and would like to pay some of the money back.

Trial Court Opinion, 1/13/20, at 2-4 (record citations, extraneous capitalization, and original brackets omitted).

On November 14, 2017, Appellant was charged with the aforementioned crime, as well as receiving stolen property.[4] The matter proceeded to a non-jury trial, where, on June 17, 2019, the trial court, as trier-of-fact, found

_____

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

[4] 18 Pa.C.S.A. § 3925(a).

- 3 -

Appellant guilty of theft by unlawful taking or disposition of moveable property.[5]  On September 10, 2019, the trial court sentenced Appellant to seven years' probation and ordered her to pay restitution in the amount of $86,380.00.  Appellant filed a post-sentence motion on September 20, 2019, which the trial court subsequently denied, without a hearing, on September 24, 2019.  This appeal followed.[6]

Appellant raises the following issues on appeal.

I.    Whether the Commonwealth's exhibits, namely the Glenshaw Steel payroll records, check photocopies, and the written list of bank charges prepared by John Pelch's wife, were not authenticated by someone with personal knowledge of their authenticity and preparation, making their admission an abuse of discretion?

II.   Whether the Commonwealth's exhibits prepared by non[-]testifying parties, namely the Glenshaw Steel payroll records and the written list of bank charges prepared by John Pelch's wife, constituted hearsay without an exception, making their admission an abuse of discretion?

Appellant's Brief at 5.

Appellant's issues, in sum, challenge the trial court's evidentiary rulings, admitting into evidence three of the Commonwealth's exhibits, namely Glenshaw Steel's payroll records (Exhibit 1), photocopies of checks (Exhibit 2), and a summary of bank charges prepared by a non-testifying third-party

---

[5] The trial court found Appellant not guilty of receiving stolen property.

[6] Appellant and the trial court complied with Pa.R.A.P. 1925.

(Exhibit 3). Id. at 11-24. Our standard of review and scope of review of challenges to a trial court's evidentiary rulings are well-settled.

> [T]he admissibility of evidence is within the sound discretion of the trial court, which appellate courts will not disturb absent an abuse of discretion or error of law. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but instead requires demonstration that the [trial] court's decision was a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support from the evidence or the record so as to be clearly erroneous.

Bayview Loan Servicing LLC v. Wicker, 206 A.3d 474, 482 (Pa. 2019) (citations and quotation marks omitted).

Here, Appellant's first issue raises a challenge to the admission of Commonwealth Exhibits 1 through 3 on the grounds the exhibits were not properly authenticated. Appellant's Brief at 11-18.

Pennsylvania Rule of Evidence 901(a) requires that an evidentiary item be properly authenticated, or identified, through the production of evidence that "support[s] a finding that the item is what the proponent claims it is." Pa.R.E. 901(a) (stating, "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is"). A witness, with sufficient knowledge, can authenticate, or identify, an item of evidence, through his or her testimony that the item is what it is claimed to be. Rule 901(b)(1). "[P]roof of any circumstances which will support a finding that the writing is genuine will suffice to authenticate the

writing." Sycamore Restaurant Group, LLC v. Stampfi Hartke Assocs., LLC, 174 A.3d 651, 655 (Pa. Super. 2017) (citation omitted). For purposes of authentication, a witness can "authenticate documents even if the witness did not personally record the specific information in the documents." Bayview, 206 A.3d at 476. Authentication, however, does not secure admissibility of an item into evidence. Keystone Dedicated Logistics, Inc. v. JGB Enters., Inc., 77 A.3d 1, 12 (Pa. Super. 2013) (stating, that authentication, or identification, is a condition precedent to admissibility).

Here, the Commonwealth introduced Exhibit 1, which was identified as Glenshaw Steel's payroll time sheets prepared by and received from Paychex. N.T., 3/25/19, at 37. Pelch, as general manager of Glenshaw Steel, testified that he spoke with a Paychex payroll specialist and requested copies of Glenshaw Steel's payroll time sheets, which arrived the next day via courier. Id. at 35. The time sheets contained, inter alia, Glenshaw Steel's account number, and Pelch recognized the time sheets as being supplied by Paychex and reporting Glenshaw Steel's payroll information. Id. at 37. Therefore, we find no abuse of discretion in the trial court's determination that Commonwealth Exhibit 1 was properly authenticated.

The Commonwealth introduced Exhibit 2, which was identified as a series of checks that Appellant allegedly issued, payable to herself, without authorization. Id. at 43. Pelch stated that the checks were Glenshaw Steel checks bearing the account numbers of Glenshaw Steel's payroll account and operating account. Id. Therefore, we find no abuse of discretion in the trial

- 6 -

court's determination that Commonwealth Exhibit 2 was properly authenticated.

Finally, the Commonwealth introduced Exhibit 3, which was identified as a compilation of charges posted to Glenshaw Steel's bank accounts that were incurred as a result of checks Appellant allegedly issued for her personal benefit to third parties that did not have a business relationship with Glenshaw Steel. Id. at 47. Pelch recognized Exhibit 3 as a compilation of charges posted to Glenshaw Steel's bank accounts that was prepared by Pelch's wife under Pelch's supervision, and Pelch testified that the compilation reflected the total amount of checks allegedly written by Appellant to third parties for her personal benefit. Id. Therefore, we find no abuse of discretion in the trial court's determination that Exhibit 3 was properly authenticated. Consequently, Appellant's first issue is without merit.

In her second issue, Appellant challenges the admission into evidence of Glenshaw Steel's payroll time sheets (Exhibit 1) and the compilation of charges posted to Glenshaw Steel's bank accounts (Exhibit 3) on the grounds that both exhibits constituted inadmissible hearsay.[7] Appellant's Brief at 19-24.

_____

[7] Appellant does not challenge the admission of the photocopies of checks allegedly written by Appellant for her personal benefit (Commonwealth Exhibit 2) on the grounds these photocopies of the checks constituted inadmissible hearsay. See Appellant's Brief 19-24.

"Pennsylvania's rule against hearsay provides that a statement, which includes a [']written assertion,['] is excludable if the person who made the statement does not make it [']while testifying at the current trial['] and if the evidence is offered [']to prove the truth of the matter asserted in the statement.[']"  Bayview, 482 A.3d at 482, citing Pa.R.E. 801 and 802. Hearsay evidence may be admissible, however, if the evidence falls within one of the established exceptions, which are predicated upon "the necessity for such evidence" and "the circumstantial probability of its trustworthiness". Bayview, 482 A.3d at 483 (citations omitted).

One such exception to the rule against hearsay is the business records exceptions, in which "the circumstantial trustworthiness arises from the regularity with which business records are kept and the reliance that businesses place on the accuracy of those records."  Id. (citations omitted). The business records exception to the rule against hearsay "has been incorporated into Pennsylvania law through the Uniform Business Records as Evidence Act [], 42 Pa.C.S.[A.] § 6108, []and Pennsylvania Rule of Evidence 803(6)[.]"  Bayview, 482 A.3d at 483.

The Uniform Business Records as Evidence Act states, in pertinent part,

General rule.--A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S.A. § 6108(b). Pennsylvania Rule of Evidence 803(6) states,

> Records of a Regularly Conducted Activity. A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition [is not excludable by the rule against hearsay, regardless of whether the declarant is available as a witness,] if:
>
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6). Both the Uniform Business Records as Evidence Act and Rule 803(6) "generally require that a custodian or other qualified witness testify that the record was made "at or near the time" of the event recorded and that the record was kept in the regular course of business." Bayview, 206 A.3d at 483 (citation and footnote omitted).

With regard to Exhibit 1, Appellant argued that the payroll time sheets were inadmissible hearsay and did not qualify for the business records exception to the rule against hearsay. N.T., 3/25/19, at 39-40, 84. Appellant objected to the admission of Exhibit 1, stating,

it appears that [there is] information [contained in Exhibit 1 and there is] no way that you can really delineate [who is] responsible for inputting the data. . . . [The exhibit is] not admissible as a record regularly kept in the ordinary course of business because the witness is here to testify he was not in the business of keeping his records. He said he had nothing to do with this other than [] giving [Paychex] his business. And [there is] no one from [Paychex] to testify that [Exhibit 1 is] the type of records that are kept in the normal course of business.

Id. at 39-40.

The trial court, in admitting Exhibit 1 stated,

The Glenshaw Steel payroll records [(Exhibit 1)] fall within the business records exception to hearsay[.] . . . Pelch, as general manager of Glenshaw Steel, constitutes "another qualified witness" under Rule 803(6). He testified that Exhibit 1 was the payroll records of Glenshaw Steel. His testimony established that either Pelch or [Appellant] would create the payroll record by submitting employee hours to [Paychex]. [Paychex] would then process payroll according to the information provided by either Pelch or [Appellant] and the funds to cover payroll were withdrawn from the Glenshaw Steel payroll account. This action occurred each week with regularity.

Trial Court Opinion, 1/13/20, at 7 (extraneous capitalization omitted).

A review of the record demonstrates that the payroll time sheets (Exhibit 1) were obtained from Paychex. N.T., 3/25/19, at 35, 37-38. The exhibit includes payroll journal entries depicting Appellant's payroll information, including, inter alia, the check date, number of hours worked, rate of pay, federal and state tax withholdings, and the net amount of the paycheck. See Commonwealth Exhibit 1. The exhibit included Glenshaw Steel's Paychex account number and showed the date and time the payroll reports were generated. Id. Pelch identified the payroll time sheets as depicting Glenshaw

- 10 -

Steel's payroll information and the paychecks issued to Glenshaw Steel's employees. Id. at 37, 40-41. Appellant's counsel acknowledged that Exhibit 1 "appear[s] to be something from the company called Paychex and it says Glenshaw Steel on them." Id. at 38. Pelch stated that employee paychecks were generated based upon the hours either he or Appellant reported to the payroll specialist at Paychex on a weekly basis. Id. at 34.

We concur with the trial court that although Exhibit 1 constituted hearsay,[8] the exhibit is admissible under the business records exception to the rule against hearsay. It is axiomatic that companies, such as Glenshaw Steel, are required to maintain records of how each employee is paid for purposes of, inter alia, the reporting of employee wages at calendar year-end for income tax purposes. Because of the seemingly complicated nature of calculating, inter alia, each employee's federal and state income tax withholdings and unemployment withholdings, and the reporting of the same to federal and state agencies, companies with a small number of employees, such as Glenshaw Steel, commonly outsource payroll services to third-party vendors, such as Paychex, who are tasked with accurately reporting and

_____

[8] Exhibit 1 constituted hearsay as it was offered to prove the details of Appellant's paychecks, including the number of hours reported and payments received, and that Pelch did not personally issue the paychecks and did not prepare the payroll reports.

tracking payroll matters.[9] In the instant case, in order for Glenshaw Steel employees to be paid for work performed, either Pelch or Appellant reported to Paychex on a weekly basis the number of hours each employee worked, and employees were paid based upon the information supplied by either Pelch or Appellant. The trustworthiness of Exhibit 1 circumstantially arose from the regularity with which the payroll time sheets were retained by Paychex upon receipt of the information supplied by either Pelch or Appellant on a weekly basis, and from the reliance Glenshaw Steel placed on the accuracy of the payroll time sheets for purposes of, inter alia, reporting employee wages. Therefore, the trial court did not abuse its discretion in admitting Exhibit 1.

With regard to Exhibit 3, Appellant contends that the exhibit, as well as the bank statements upon which Exhibit 3 was based, constituted hearsay. Appellant's Brief at 21; see also N.T., 3/25/19, at 40 (reflecting Appellant's objection to Exhibit 3 on the grounds it constituted hearsay without exception). Appellant argues that "Pelch's inability to qualify the [bank statements] containing the underlying information as a business record [exception to the rule against hearsay] would serve to exclude the summary based on that information." Id. at 23.

_____

[9] We take judicial notice that Paychex describes its services, in part, as, "adding employee hours each pay period, calculating payroll taxes at the correct rates and paying them to the appropriate agencies, setting up direct deposit, and filing returns on time." See https://www.paychex.com/payroll (visited October 7, 2020).

Pennsylvania Rule of Evidence 1006 provides,

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Pa.R.E. 1006.

The trial court, noting that the compilation of charges was not hearsay and admitting Exhibit 3 into evidence pursuant to Rule 1006, stated,

> with respect to the compilation of bank charges, Pelch testified that while his wife [] drafted the compilation, she did so with his oversight. Pelch testified that he reviewed the bank statements and that each of the items on Exhibit 3 constituted a charge that was not authorized to be made. Further, he testified that the expenditures were not made on behalf of Glenshaw Steel.

> Initially, [the trial] court notes that the written list of bank charges offered as Exhibit 3 is not hearsay. Exhibit 3 was submitted as a compilation, or summary, of the charges Pelch found after [reviewing] Glenshaw Steel's bank records. Pursuant to Pa.R.E. 1006, this summary is admissible. The Commonwealth submitted [Exhibit 3] to prove the content of the relevant bank statements, which were produced in discovery.

Trial Court Opinion, 1/13/20, at 6-7 (extraneous capitalization omitted).

The record demonstrates that the bank statements, which covered more than 12 months, were voluminous,[10] and Pelch recognized the bank statements as relating to Glenshaw Steel's bank accounts. N.T., 3/25/19, at 46. The trustworthiness of bank statements circumstantially arises from the

_____

[10] Neither party contests the presumptively voluminous nature of the bank statements.

regularity with which the records are retained by financial institutions for the purpose of depicting debits and credits posted to customer bank accounts, such as Glenshaw Steel's bank accounts, and the amount of funds available to the customer at the end of each statement period. Moreover, companies, such as Glenshaw Steel, regularly rely on the accuracy of the bank statements to reconcile their operating accounts and verify the amount of funds on-hand for spending purposes. Therefore, the bank statements, if presented at trial, would have been admissible pursuant to the business records exception to the rule against hearsay.[11]

In compiling a summary of the fraudulent charges as depicted in Exhibit 3, Pelch's wife, under Pelch's supervision and oversight, reviewed Glenshaw Steel's bank accounts for inconsistencies, which included, inter alia the payment of various utility bills, telephone bills, and car loan invoices that were not Glenshaw Steel's financial obligations and were for Appellant's personal benefit. N.T., 3/25/19, at 46-47; see also Commonwealth Exhibit 3. Due to the voluminous nature of the bank statements, however, it was within the trial court's discretion to admit a summary of the charges appearing on the voluminous bank statements pursuant to Rule 1006, provided the bank statements were previously made available to Appellant. The trial court noted

_____

[11] Pragmatically, the underlying materials upon which the compilation is based must also constitute admissible evidence, regardless of whether the materials are admitted at trial. Otherwise, Rule 1006 would become a mere vehicle for avoiding evidentiary limitations, such as the rule against hearsay.

that the Commonwealth provided Appellant with the bank statements in the course of discovery and neither party contests this fact. Therefore, we find no abuse of discretion on the part of the trial court in admitting Exhibit 3. Consequently, Appellant's second issue is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2020