**[J-18-2023] [MO:Donohue, J.]**

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| GREENWOOD GAMING AND ENTERTAINMENT, INC.; MOUNTAINVIEW THOROUGHBRED RACING ASSOCIATION, LLC; CHESTER DOWNS AND MARINA, L LC; WASHINGTON TROTTING ASSOCIATION, LLC; STADIUM CASINO LLC; VALLEY FORGE CONVENTION CENTER PARTNERS, LP, DOWNS RACING, LP | : : : : : : : : : : : : : : | No. 76 MAP 2021<br><br>Appeal from the Order of the Commonwealth Court at No. 571 MD 2018 dated September 8, 2021.<br><br>ARGUED: April 19, 2023 |
| v. | : : : : : | |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF REVENUE; PAT BROWNE, SECRETARY OF THE DEPARTMENT OF REVENUE, IN HIS OFFICIAL CAPACITY | : : : : : : : : | |
| APPEAL OF: GREENWOOD GAMING AND ENTERTAINMENT, INC., MOUNTAINVIEW THOROUGHBRED RACING ASSOCIATION, LLC, AND CHESTER DOWNS AND MARINA, LLC | : : : : : : | |

## CONCURRING AND DISSENTING OPINION

**JUSTICE MUNDY**                                              **DECIDED: December 19, 2023**

I join the majority's holding concerning the standard the Commonwealth Court is to apply on remand. *See* Majority Op. at 19-23. I also agree that the Casinos' present weight-of-the-evidence claim has been rendered moot. *See id.* at 24.

My only reservation is with the majority's decision not to reach the question of whether the Commonwealth Court erred in denying the Casinos' motion to strike portions

of Mr. Lightman's testimony. Without a ruling on that question, this controversy will be set up for a possible subsequent appeal on that same issue, which will waste judicial resources. Also, if this Court eventually holds that the motion to strike should have been granted, that could lead to a second remand, which would, again, be wasteful of time and judicial resources. *Cf. Parsowith v. Dep't of Revenue*, 723 A.2d 659, 663 (Pa. 1999) (deciding an issue in the interest of judicial economy that could have been decided on remand). In resolving the question, I would affirm the Commonwealth Court's denial of the Casinos' motion to strike, which in turn would instruct the Commonwealth Court on remand that it is permitted to consider all of Mr. Lightman's testimony consistent with its earlier ruling, discussed below, in which the court sustained in part the Casinos' objection to the proffer at trial.

Mr. Lightman was disclosed as an expert in the design and development of slot-style games, internet slot games, and iLottery games. While his expert report is not in the record, the proffer is. In the parties' joint pretrial statement, Mr. Lightman was listed as an expert witness for Appellees, who stated that he

> has been involved in the design and development of slot-style casino games and internet instant games for nearly 30 years. He holds 4 patents. Mr. Lightman may be offered as an expert in the development and design of slot-style games, internet slot games and iLottery games. Mr. Lightman may testify about the history of the online gaming industry and the online Lottery industry; the development of games for both industries; the differences between the two industries; and the customer base for both industries. Mr. Lightman's CV and report are attached.

Joint Pretrial Statement at 23, *reprinted in* RR. 666a.[1]

Notably, the limitation the Commonwealth Court placed on his trial testimony was consistent with the above. When the Department proffered Mr. Lightman at trial as an

---

[1] *See also* N.T. Trial, at 416, *reprinted in* RR. 531a; Amended Joint Pretrial Statement at 23, *reprinted in* RR. 831a.

expert witness, it asked him if he had already been qualified as an expert in the development and design of slot games, internet slot games, *and lottery products*. *See* N.T. Trial, at 912, *reprinted in* RR. 1901a. The Casinos objected and the court sustained the objection in part, ruling Mr. Lightman would be "bound by how he was disclosed." *Id*. at 916, *reprinted in* RR. 1906a. The court then took a brief recess to review the transcript of the preliminary injunction hearing and the parties' joint pretrial statement, both of which contained information about Mr. Lightman's expertise.

After the recess, the court clarified that Mr. Lightman would be qualified to testify concerning traditional lottery products to the extent knowledge of those products was germane to the design and development of iLottery games and was relevant to the history of the online lottery industry, as well as the differences between the online gaming industry and the online lottery industry and their customer bases. *See id*. at 924, *reprinted in* RR. 1914a. Thereafter, Mr. Lightman testified concerning his experience with slot machine games and iLottery games, the design and development of such games, and how iLottery games have innovated based on traditional lottery games and have incorporated some of their features. He also gave his opinion concerning the *sine qua non* of slot machines and what it means to simulate casino-style slots. At the conclusion of Mr. Lightman's testimony, the Casinos moved to strike his testimony on the grounds it exceeded his qualifications as an expert, and furthermore, his description of what constitutes the essence of a slot machine could not be found in any statute, regulation, or published industry standard, but comprised his own opinion based solely on his experience in the industry. *See id*. at 1072-75, *reprinted in* RR. 2062a-65a.

The court deferred ruling on the motion pending post-trial briefs. *See id*. at 1075, *reprinted in* RR. 2065a; *see also* Majority Op. at 9 & n.9. In their post-trial brief, the Casinos argued Mr. Lightman should not have been allowed to testify concerning the

design of lottery products distinct from iLottery products, and that his testimony should have been subject to a *Frye* hearing as a condition of admissibility inasmuch as he relied on his own definition of the essence of a slot machine which, the Casinos claimed, was his own "fanciful creation" based solely on his subjective experience.[2]

In denying the motion to strike, the Commonwealth Court observed that trial courts retain discretion to admit or exclude expert testimony, which must be supported by reference to some scientific authority, whether facts, empirical studies, or the expert's own research. Referring to Rule of Evidence 702 and judicial decisions interpreting it, the court expressed that an expert who has specialized knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's knowledge surpasses that of the average layperson and will help the trier of fact understand other evidence in the case or determine a fact in issue, and if the methodology used is generally accepted in the relevant field. The court continued that the absence of a treatise or study directly on point goes to the weight of the testimony, not its admissibility. Further, the court stated, an expert's opinion may be based on the expert's years of experience in the relevant field.

Reviewing the trial transcript, the court found that Mr. Lightman's testimony did not exceed the scope of the court's limiting instruction as recited above – namely, that he could testify concerning traditional lottery products to the extent such testimony related to the development of iLottery games and to the history of the online lottery industry, as well as the differences between the online gaming industry and the online lottery industry and their customer bases:

---

[2] *See Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) (holding that novel scientific evidence based on a particular scientific technique is only admissible if the technique has gained general acceptance in the relevant scientific community).

In designing iLottery games, Mr. Lightman explained he: "helped lotteries innovate [] their traditional products, to expand them into new technologies"; in that process, he became familiar and worked with those lottery products; and that the iLottery games he designed incorporated concepts from traditional lottery instant games.

*Greenwood Gaming & Entm't v. Commonwealth*, No. 571 M.D. 2018, *slip op.* at 7 (Pa. Cmwlth. May 25, 2021) (quoting N.T. Trial, at 927, 929, 939-40) (alteration in original). On this basis, the court concluded Mr. Lightman's testimony regarding traditional lottery products was sufficiently linked to his development of iLottery games and online lottery products to have complied with the court's earlier ruling which sustained in part the Casinos' objection at the time Mr. Lightman took the witness stand, and which clarified the scope of the permissible testimony after the court's *in camera* review.

The court also rejected the portion of the Casinos' motion to strike challenging Mr. Lightman's conclusion that to simulate a slot machine an online offering would have to include spinning reels and pay lines. In this respect the court found such testimony admissible as having been based on Mr. Lightman's vast experience in designing slot machines for casinos and online lottery products for lotteries. The court added that such testimony was no different than that of David Schultz, a gaming industry executive who was one of the Casinos' experts. The court also observed that, in any event, its decision of whether the Department had improperly simulated casino-style slots would be decided based on the court's own interpretation of the Gaming Act and the Lottery Law as amended. *See id.* at 7-8.

The Casinos presently renew the arguments they made to the Commonwealth Court. *See* Brief for Appellants at 61-70. They characterize the Commonwealth Court's statement, made before its *in camera* review, that Mr. Lightman would be "bound by how he was disclosed," as a ruling that subsisted in full, separate and apart from its later clarification concerning the scope of his permissible testimony. The Casinos conclude

Mr. Lightman should not have been permitted to testify about lottery products distinct from iLottery products. *See id*. at 64-65.

Separately, the Casinos repeat their objection to Mr. Lightman's testimony regarding slot machines, suggesting it lacked adequate scientific support, and such testimony should have been subjected to a *Frye* hearing. Although the Department disagrees that *Frye* was implicated and argues the *Frye* issue is waived regardless as the Casinos did not raise it until after trial, *see* Brief for Appellees at 30, 55, the Casinos dismiss that argument, asserting they objected to the testimony at trial as being based on Mr. Lightman's own private definition of a slot machine, and they were not required to use "magic words" to preserve a *Frye*-based objection. Reply Brief for Appellants at 28.

In my view the Commonwealth Court acted within its discretion in overruling the Casinos' motion to strike with regard to Mr. Lightman's testimony relating to traditional lottery products. It is self-evident that to understand the design of online lottery products an expert must first have some familiarity with the original products and have the ability to describe them and explain how the online versions were derived from them. Given trial courts' "broad discretion in evidentiary matters," *Bayview Loan Servicing v. Wicker*, 206 A.3d 474, 486 (Pa. 2019), the Commonwealth Court's decision not to strike such testimony should not be disturbed.[3]

The second part of the Casinos' argument as they present it to this Court primarily focuses on the alleged need for a *Frye* hearing. *See* Brief for Appellants at 66-70. I would credit the Department's contention that the issue is waived. The Casinos made a timely

---

[3] Nor is the Casinos' argument well taken to the extent they suggest the Commonwealth Court's statement that Mr. Lightman would be "bound by how he was disclosed" should be construed as more broadly exclusive than the court's subsequent clarification after it had completed its *in camera* review. The court itself explained that it was the other way around, *i.e.*, that Mr. Lightman would be generally bound by his disclosure, but he could still testify consistent with the court's subsequent explanation. *See Greenwood Gaming & Entm't*, No. 571 M.D. 2018, *slip op*. at 3.

motion to strike at trial upon the conclusion of Mr. Lightman's testimony, in which they alleged two specific grounds: that he had exceeded his qualifications as an expert, and that his slot-machine testimony lacked an adequate foundation. *See* N.T. Trial, at 1072, *reprinted in* RR. 2062a. Neither ground invoked *Frye*, and it is established that "if the ground upon which an objection is based is specifically stated, all other reasons for its exclusion are waived." *Commonwealth v. Arroyo*, 723 A.2d 162, 170 (Pa. 1999) (internal quotation marks and citation omitted). The Casinos' present attempt to avoid waiver on the basis that it was not required to use "magic words" is unpersuasive. Pennsylvania is known to be a *Frye* jurisdiction, and if the Casinos believed a *Frye* hearing was warranted, they could have said so at trial when the court was in a position to screen the expert evidence accordingly.[4]

For the reasons given above, I would affirm the Commonwealth Court's denial of the Casinos' motion to strike. I therefore respectfully dissent from this Court's present ruling to the extent it elects not to resolve that issue. I join the ruling in all other respects.

---

[4] Regardless, this portion of the motion pertains to Mr. Lightman's description of the supposed two quintessential slots features: spinning reels and pay lines. This Court presently rejects that description, and the Commonwealth Court on remand will be bound by our holdings in this regard. It thus seems the gravamen of the Casinos' objection to Mr. Lightman's testimony – that he made use of his own definition of a slot machine unconnected with any statute, regulation, or industry standard – is now of little moment.