J-A05038-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, NA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PETER BOTTOS | : | |
| | : | |
| Appellant | : | No. 2174 EDA 2025 |

Appeal from the Judgment Entered October 16, 2025
In the Court of Common Pleas of Chester County Civil Division at No(s):
2024-04334-CT

BEFORE:  KUNSELMAN, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED JUNE 25, 2026**

Peter Bottos ("Bottos") appeals the trial court's judgment finding him liable to JPMorgan Chase Bank, N.A. ("Chase") for $14,802.74 for charges on his Chase credit card.  Because we find no merit in Bottos's eight issues asserting judicial bias, the absence of a valid contract, and various evidentiary errors, we affirm.

In June 2024, Chase filed a complaint to collect a credit card debt from Bottos, who filed an answer with new matter to which Chase responded.  A panel of arbitrators found for Chase.  In response, Bottos demanded a trial.  Bottos elected not to attend the ensuing March 2025 trial.  Chase presented its case through the testimony of its custodian of records, Amber Near

("Ms. Near").[1] Ms. Near's testimony, and the documents admitted at trial, established that, on May 30, 2017, Bottos completed a cardmember application on the internet and received a Chase Bank credit card ("the credit card"). The credit card was later subject to a change in terms: namely, because of a merger, in May 2019, Chase Bank USA, N.A. changed its name to JPMorgan Chase Bank, N.A. **See** N.T., 3/6/25, at 10-18, Exhibits P-1 to P-5.[2] Bottos used the credit card for approximately six years until he ceased payment. As of January 2024, Bottos owed Chase $14,802.74 in charges and interest. **See id**. at 23-25.

The trial court found for Chase in the amount of $14,802.74. Bottos filed a reconsideration motion, which the trial court treated as a post-trial motion and denied. **See** Memorandum Opinion and Order, 9/2/25. Bottos timely appealed and he and the trial court complied with Pa.R.A.P. 1925.

Bottos presents eight issues for this Court's review:

_____

[1] Ms. Near, who was not a Chase employee at the time Bottos was a Chase cardholder, identified herself as an "Associate Vendor Management Analyst," N.T. 3/6/25, at 9. Regardless, she gave testimony about business records consistent with that of a custodian of records.

[2] Chase introduced the following exhibits through Ms. Near's testimony: Exhibit P-1, Bottos's on-line internet credit card application, which contained his name, social security number, home phone number, and address, Exhibit P-2, the cardmember agreement for Bottos's account, Exhibit P-3, an updated credit card agreement sent to Bottos at his home address in 2019, including notification that Chase Bank USA, NA had merged with Morgan Chase and changed its name to JPMorgan Chase Bank, N.A, Exhibit P-4, an unredacted copy of Bottos's on-line credit card application, and Exhibit P-5, the billing statements for Bottos's account from 2017 to 2023, which were sent to Bottos's home address. **See** N.T., 3/6/25, at 10-23.

(1) Whether the trial court erred and abused its discretion by questioning [Bottos's] strategic decision not to appear at trial and making a negative inference therefrom adverse to [Bottos] immediately at the outset of the non-jury bench trial[?]

(2) Whether the trial court erred and abused its discretion by issuing the written Order/Decision, dated March 6, 2025[,] in favor of [Chase] and against [Bottos], in the amount of $14,802.74[?]

(3) Whether [Chase] failed to establish the three (3) elements of a breach of contract action in Pennsylvania, as against [Bottos], including[,] but not limited to[,] failing to establish: (a) the existence of a contract by and between [Chase] and [Bottos], including its essential terms; (b) a breach of a duty imposed by the contract; and (c) resultant damages allegedly sustained by [Chase][?]

(4) Whether the trial court erred and abused its discretion by failing to require [Chase] to produce evidence of the assignment of the credit card claim from Chase Bank USA, N.A. to [Chase] [?].

(5) Whether [Chase] failed to produce evidence of an assignment of claim from Chase Bank USA, N.A. to [Chase] ALLEGEDLY MADE ON May 18, 2019, as revealed on Bates Stamp page 0021 of [Chase's] Trial Exhibit "P-2"[?]

(6) Whether the trial court erred and abused its discretion by admitting into evidence at trial [Chase's] Exhibit "P-1," a generic Chase Internet Application, [Chase's] Exhibit "P-2," a generic Cardmember Agreement, [Chase's] Exhibit "P-3," Notice of Change in Terms, [Chase's] Exhibit "P-4," Unredacted Copy of Application[,] and [Chase's] Exhibit "P-5," Chase billing statements, where [Chase] failed to satisfy the requirements of both the Business Record Exception to the Hearsay Rule, Pa.R.Civ.P. 803(6) and the Uniform Business Records as Evidence Act, 42 Pa. C.S.A. Section 6108[?]

(7) Whether the trial court erred and abused its discretion by failing to apply the doctrine of *stare decisis* RE: **Commonwealth Financial Systems v. Larry Smith**, 15 A.3d 492 (Pa. Super. 2011) to the facts of this case and to render a decision in favor of [Bottos] and against [Chase] [?]

- 3 -

(8) Whether the trial court erred and abused its discretion by admitting into evidence 261 pages of previously undisclosed documents in [Chase's] Trial Exhibit "P-5," (Bates Stamped 0048-0308), which were not provided by [Chase] to [Bottos] prior to trial, which was prejudicial to [Bottos] [?]

Bottos's Brief at 1-3 (capitalization standardized, citation form corrected, issues reordered).

Bottos asserts he is entitled to relief[3] because the trial court commented on his failure to appear at trial, demonstrating its bias. *See* Bottos's Brief at 12-16.

A party's failure to testify in a civil proceeding can support an inference his testimony would have been unfavorable to him. *See Kovach v. Solomon*, 732 A.2d 1, 8-9 (Pa. Super. 1999). A party alleging bias bears the burden to produce evidence of bias, prejudice, or unfairness. *See Reilly by Reilly v. Southeastern Pennsylvania Transp. Authority*, 489 A.2d 1291, 1299 (Pa. 1985) (assessing bias assertion in the context of a recusal claim). An issue not raised in the trial court is waived and cannot be raised for the first time on appeal. *See* Pa.R.A.P. 302(a).

Bottos notes the trial court stated it expected him to be present at trial and, further that Bottos required everyone else involved in the case to be present but did not have the "courtesy" to appear himself. He asserts these

_____

[3] All eight of Bottos's claims are phrased as a request for reconsideration rather than for reversal.

- 4 -

statements showed "prejudice, bias, capricious disbelief or prejudgment." *See* Bottos's Brief at 12-14. Bottos also asserts the trial court did not directly respond when his counsel requested that no negative inference be drawn from Bottos's absence, and the court instead allowed a "pregnant pause." *See id*. at 14-16.

The trial court denied that a "pregnant pause" occurred after counsel asked it not to draw a negative inference; the court stated it simply changed the subject to the possibility of settlement. The trial court further stated the conclusion it drew a negative inference from Bottos's failure to appear is "pure speculation;" it was permitted to draw a negative inference against Bottos; and, in any event, Chase proved its case. Trial Court Opinion, 8/12/25, at 2-4.

Bottos's claim is unreviewable. The record shows that Bottos failed to make timely objection to the trial court's allegedly biased comments or the alleged pregnant pause. *See* Pa.R.A.P. 302(a); *see also Thorson v. EDDW, LLC*, 309 A.3d 141, 148 (Pa. Super. 2024) (stating to preserve an issue for appeal, a litigant must make a timely, specific objection at trial).[4]

_____

[4] Even if reviewable, Bottos's claim would be without merit. The trial court was permitted to draw a negative inference from Bottos's failure to testify. *See Kovach*, 732 A.2d at 8-9. Further, Bottos presents no evidence to meet his high burden to prove the court's bias, prejudice, or unfairness. *See Reilly by Reilly*, 489 A.2d at 1299.

Bottos combines his next two issues, which assert Chase failed to prove the existence of a valid contract. *See* Bottos's Brief at 16-23.

To prevail on a breach of contract claim, a party must establish the existence of a contract, its breach, and damages resulting from the breach. *See 412 N. Front St. Associates, LP v. Spector Gadon & Rosen, P.C.*, 151 A.3d 646, 657 (Pa. Super. 2016). To be enforceable, a contract must make certain the nature and extent of the mutual obligations, and the parties must have agreed on the material and necessary details of their bargain. *See Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. 2006). In an action to recover for credit card debt, a creditor need not present the original cardholder agreement to prove a breach of contract; it may introduce an updated agreement. *See Discover Bank v. Booker*, 259 A.3d 493, 496 (Pa. Super. 2021); *Discover Bank v. Stucka*, 33 A.3d 82, 87 (Pa. Super. 2011). Implied contracts arise under circumstances which, according to the ordinary course of dealing and the common understanding of people, show a mutual intent to form a contract. *See Ingrassia Constr. Co. v. Walsh*, 486 A.2d 478, 483 (Pa. Super. 1984). The intent of the parties to make an implied-in-fact contract is inferred from their acts in light of the surrounding circumstances. *Id*. Contract interpretation is a question of law; therefore, our standard of review is *de novo*, and our scope of review is plenary. *McMullen v. Kutz*, 985 A.2d 769, 773 (Pa. 2009).

Bottos asserts he is due relief because he asserted in his new matter that the contract with Chase was generic and "the goods purchased[,] if any[,] were completely defective and worth nothing." *See* Bottos's Brief at 18. He states Chase failed to prove the existence of a contract because, *inter alia*, the contract offered at trial did not contain his name or address. *See id*. at 19-21, citing *Atlantic Credit & Finance, Inc. v. Guiliana*, 829 A.2d 340 (Pa. Super. 2003).[5] Bottos claims Ms. Near could not testify with certainty when the contract breach occurred, *see id*. at 22, and asserts Chase failed to prove which portions of the debt were attributable to principal, accrued interest, fees, and penalties. *See id*. at 22-23.

The trial court found the business records Chase admitted into evidence included an *unredacted* copy of Bottos's credit card application, establishing Bottos opened his account in May 2017, and additional records showing Bottos's continued use of the card and implied acceptance of its modified terms. The trial court also found *Giuliana* inapposite where, as here, a debt collection claim is supported by evidence such as the account application, changes to its terms and conditions, and the debtor's continued use of the card after changes to its terms and conditions. *See* Trial Court Opinion, 8/12/25, at 6-7, citing *Booker*, 259 A.3d at 496; *J.F. Walker Co., Inc. v.*

_____

[5] Bottos also asserts Ms. Near was not qualified to testify about Chase's business records because her employment began after the transactions at issue. We address that claim in our discussion of Bottos's challenge to the admissibility of business records.

*Excaliber Oil Group, Inc.*, 792 A.2d 1269, 1272 (Pa. Super. 2002) (stating existence of a contract may be manifested orally or in writing, or as inferred from the acts and conduct of the parties).

Through Ms. Near, Chase introduced into evidence Bottos's on-line internet application, which contained Bottos's name, social security number, home phone number, and address, and an unredacted copy of Bottos's on-line credit card application. Chase's evidence also included Bottos's cardmember agreement, an updated agreement sent to Bottos at his home address in 2019, which stated Chase Bank USA, NA was changed to JPMorgan Chase Bank, N.A, and billing statements from the time he opened the account in 2017 until his last statement in 2023, sent to Bottos's home address, demonstrating his payment of debt incurred on the credit card for approximately six years until he abruptly ceased payment. **See** N.T., 3/6/25, at 10-23. Ms. Near also testified the billing statements established Bottos had a credit card balance of $14,802.74 on January 9, 2024, and the money was not repaid. **See id**. at 23-25.

The evidence thus demonstrated that Bottos entered into a contract with Chase which established the nature and extent of the parties' mutual obligations, Bottos's awareness of Chase's merger through written notice and his continued use of his Chase credit card thereafter, Bottos's breach of contract by failing to pay the charges, and the damages Chase incurred. **See Booker**, 259 A.3d at 496. Bottos provides no legal support for his additional

- 8 -

assertion Chase was required to establish the amounts of his debt attributable to principal, accrued interest, fees, and penalties. In the absence of proof such details were required to establish a valid contract, we decline to award relief on that basis.

Bottos's next issue asserts the cardmember agreement notes that JPMorgan Chase is a successor by merger to Chase Bank USA, N.A., but Chase failed to prove the merger with evidence of a written bill of sale. *See* Appellant's Brief at 23-24.

The trial court quotes language from the 2019 update to the credit card agreement, sent to Bottos, which stated Chase was a successor by merger to Chase Bank USA, N.A., "and any other additional account agreements and documents shall be read as JPMorgan Chase Bank, N.A."

Bottos provides no authority for the proposition Chase may not collect on his debt because he was not provided with a written bill of sale for Chase's merger. Moreover, Chase gave Bottos notice of its merger with JPMorgan and Bottos assented to that merger by continuing to use his Chase credit card. *See Booker*, 259 A.3d at 496-97. The claim thus has no merit.

Bottos's next issue asserts Ms. Near admitted she had no documentation of the assignment of Bottos's debt by merger. *See* Bottos's Brief at 30-33. As just noted, Bottos's continued use of the Chase credit card after notification of the merger defeats this claim.

Bottos's sixth issue asserts the trial court erred in admitting Chase's Exhibits P-1 to P-5 under the business records exception to the hearsay rule, Pa.R.E. 803(6), and 42 Pa.C.S.A. § 6108 ("the Act"). **See** Bottos's Brief at 24-29.

The admission of evidence implicates a trial court's discretion and will only be reversed if in reaching the conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will. **See Maisano v. Avery**, 204 A.3d 515, 523 (Pa. Super. 2019). A records custodian is qualified to authenticate documents even if she did not personally record the specific information in the documents. **See Bayview Loan Servicing, LLC v. Wicker**, 206 A.3d 474, 486 (Pa. 2019). Further, business records are admissible even where the authenticating witness had personal knowledge only of the record-keeping procedures **after** the original record is created and even if those records were created by another company. **See id**. at 484.

The business records exception has been incorporated into Pennsylvania law through the Act and Rule 803(6). **See Bayview**, 206 A.3d at 483. The Act provides, in pertinent part, as follows:

> **b) General Rule.**-A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S.A. § 6108(b). "As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence." ***Boyle v. Steiman***, 631 A.2d 1025, 1032-33 (Pa. Super. 1993).

Rule 803(6) provides, in relevant part, as follows:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

* * * *

**(6) Records of a Regularly Conducted Activity**. A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business," which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

The Act and Rule 803(6) substantially overlap in that both generally require that a custodian or other qualified witness testify that the record was made at or near the time of the event recorded and that the record was kept in the regular course of business. *Bayview*, 206 A.3d at 483. Moreover, both the Act and the Rule provide for the trial court to determine whether the circumstances surrounding the record justify its admission or indicate a lack of trustworthiness. *Id*.

Bottos asserts Chase failed to authenticate the business records it introduced at trial because they pre-dated Ms. Near's employment, and because Ms. Near had no knowledge of how Chase handled its business records prior to the 2019 merger. *See* Bottos's Brief at 24-26, citing *Commonwealth Financial Systems v. Smith*, 15 A.3d 492 (Pa. Super. 2011). He additionally asserts, citing criminal law cases, that documents prepared in anticipation of litigation do not qualify as business records. *See* Bottos's Brief at 28-30.

The trial court found Ms. Near identified the records in question and testified they were maintained in the regular course of business, which defeats the assertion the records were prepared in anticipation of litigation. The trial court additionally determined *Commonwealth Financial Systems* is inapposite because that case concerned an assignment from an original creditor to a debt buyer whereas Chase's records did not change; "the name change was all that changed at the time of this change in terms." Trial Court

Opinion, 8/12/25, at 10, quoting N.T. 3/6/25, at 29. The court further found Ms. Near's testimony was trustworthy. *See* Trial Court Opinion, 8/12/25, at 10-11.

The trial court did not err in finding Ms. Near's testimony trustworthy supporting the admissibility of the business records Chase introduced at trial. Ms. Near testified she knew Chase Bank U.S.'s records were created accurately "[b]ased on my in-depth training of Chase's practices and business procedures." *See* N.T. 3/6/25, at 31. *See Bayview*, 206 A.3d at 486 (declining to find abuse of discretion in the admission of business records offered by a custodian of records personally acquainted with the recording practice used by a predecessor company, justifying a presumption of trustworthiness even though the custodian had not worked for that company).

Bottos next asserts the trial court erred by failing to accord *stare decisis* effect to ***Commonwealth Financial Systems*** and precluding the admission of Ms. Near's testimony. He also cites a series of instances in which the trial court overruled his objections during Ms. Near's testimony. *See* Bottos' Brief at 33-39.

As discussed, ***Bayview*** held a new custodian of records ***can*** familiarize herself with a company's prior recordkeeping practices and thus offer trustworthy testimony about practices preceding his/her employment, as happened here. The ***Bayview*** court further recognized that the admissibility of such a custodian's testimony is a fact-sensitive determination. Here, the

trial court did not abuse its discretion when it found Ms. Near's testimony sufficiently trustworthy. Bottos's argument **Smith** constitutes *stare decisis* in **all cases** in which a custodian of records testifies about a predecessor company's business practices lacks merit, given the fact-sensitivity of such a claim.

Finally, Bottos asserts the court improperly admitted the copies of his credit card statements from 2017-2023, which had not been previously produced. **See** Bottos's Brief at 39-43.

The trial court rejected this claim because Chase had emailed these billing statements to Bottos during their business relationship and he had made monthly payments on the account before defaulting. Additionally, Bottos did not file a motion to compel their discovery. **See** Trial Court Opinion, 8/12/25, at 11.

The trial court did not abuse its discretion in admitting the statements into evidence. Bottos did not file a motion to compel their discovery, and he had himself received copies of those documents during the entire course of his contractual relationship with Chase.

Finding no merit in any of Bottos's claims, we affirm the trial court's judgment.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>6/25/2026</u>